ALBANY,
Dec. 1825.

Marvin
v.
Vedder

URIAH MARVIN and LEWIS BENEDICT, who are implea-
ded with GEORGE COOPER, appellants,

*against*

JOHN VEDDER, respondent.

A delivery of money due from a mortgagor to a mortgagee, with an intention
to pay, operates as a payment, without a receipt, or an endorsement on
the mortgage, or on the collateral security. And if the money be after-
wards delivered back by the mortgagee to the mortgagor, this shall be con-
strued a loan on the personal credit of the mortgagor. And the lien by the
mortgage, as to the sum paid, cannot be revived by the agreement of the
mortgagor and mortgagee, as to third persons who hold *bona fide* incum-
brances upon the mortgaged premises.

A delivery of money due from a mortgagor to a mortgagee is, of itself, *prima
facie*, evidence of payment to the extent of the sum so delivered, without
the payment being endorsed, or a receipt given. Per Colden, Senator.

When a debtor *advances* money to his creditor, which is intended, by both
parties, to be applied on the debt due, it is but another name for payment.
Per Savage, Ch. J.

ON appeal from the Court of Chancery. The respon-
dent, July 7th, 1818, filed his bill against the appellants
and George Cooper, for the foreclosure of a mortgage exe-
cuted by Cooper to the respondent, on the 20th of June,
1814, of certain land in Palatine, Montgomery County, which
with a bond as collateral security, was conditioned to pay
$1000, on or before the 1st day of June, 1815 ; and $1000,
on or before the 1st day of June, 1816, with interest.

The appellants were made parties, as being creditors of
Cooper by a judgment confessed, docketed January 18th,
1815.

The main question was, whether Cooper had paid the
first instalment.

In relation to this, the bill charged, that on or about the
1st of June, 1815, Cooper advanced to the respondent
$1000, which was intended, at the time of such advance,
to have been applied to satisfy the first instalment of the
mortgage money ; but that, within a very few days there-

after, and before this sum was credited on the bond and mortgage, Cooper applied to the respondent to take back the advance, and for an extension of the time to pay the first instalment; and that the respondent thereupon returned the $1000 to Cooper, and agreed to wait for the first instalment some time longer; and until the respondent should demand it.

December 15th, 1818, the appellants answered, that on or about the 1st of June, 1815, Cooper actually paid the $1000 to the respondent, being the first instalment of principal then due; and that the payment was absolute and unqualified; that it might be true, that Cooper, a few days after the payment, applied to the respondent to get back the $1000, and for an extension of time to pay the first instalment; and that the respondent might thereupon have returned the $1000 to Cooper, and agreed to wait for the first instalment some time longer, and until the respondent should demand the same; but the appellants had no knowledge of the facts; and therefore left the respondent to make proof thereof as he should be advised.

On replication and issue, Edward Burdick, a witness for the appellants, examined August 23d, 1821, testified, that in February or March, 1818, the respondent stated in conversation with one Snell, that he had received the first instalment of $1000, that had become due on the mortgage from Cooper; but had not endorsed it on the bond and mortgage; and that he had let Cooper have the money again shortly afterwards. And again, in June or July, 1818, after Cooper had been reputed insolvent, he inquired of the respondent, whether he had a prospect of getting the $1000 he had let Cooper have? The respondent replied that the money had been in his house but about three days when Cooper got it again; and that he thought the mortgage stood good for the whole. Witness had heard the respondent say he had reloaned the $1000, being the first instalment due on the bond and mortgage, to Cooper; that he was to have had the payment endorsed on the mortgage; and intended to get Jacob Snell to make the endorsement; but the endorsement was

not made when Cooper called for the money; and then he did not have it made.

Jacob Snell, a witness for the appellants, examined 6th of September, 1821, testified, that about 4 years ago he heard the respondent admit that he had received $1000 of Cooper; but that in a few days Cooper got it from him again; and the witness understood that the money was received on the mortgage; because the respondent remarked, at the time, that it had not been endorsed on the mortgage.

The mortgage and bond being produced, on the former there was no endorsement; but on the bond were endorsed payment as follows: Interest in full to June 1st, 1816; and August 17, 1816, $200; June 20th, 1817, $500, (paid by Benedict, one of the appellants.) Oct.—1817, $120.

Frederick I. Dockstader, a witness for the respondent, examined January 30th, 1821, testified, that the latter part of December, 1818, he heard the respondent ask Benedict, one of the appellants, to let him have $500, on the mortgage of Cooper. Benedict said this was inconvenient at the time; but he would pay that sum to the respondent in two or three months. At the same time he told the respondent he was safe; for Cooper had sufficient property to pay double the sum he owed the respondent.

Harman Vedder, a witness for the respondent, examined January 3d, 1821, testified, that in the latter part of July, 1815, in the witness' field, Cooper requested the respondent to let him keep the first instalment of $1000, due on the mortgage; and gave as a reason, that the respondent did not want the money; if he kept it, would have to put it out in small sums, &c.; that the money was safe; and the security better at that time than when it was taken. The respondent told Cooper he might retain the first instalment if he would pay the interest then due upon that instalment; that if he would call in the evening at the respondent's dwelling house, they would then arrange the business, so as to let Cooper retain the $1000, to which Cooper assented.

On the 5th of May, 1823, the late Chancellor Kent made a decree, declaring that the $1000, admitted in the bill to have been *advanced,* and stated in the answer to have been

paid, &c. were not paid to, received or applied, by the respondent, as a payment on the bond and mortgage; but were merely deposited by Cooper with the respondent for a short time; and taken back at the request of Cooper, with the consent of the complainant, without being intended, or understood by either party to be taken and applied as such payment. He, therefore, decreed a reference to a Master, to take an account upon this principle, and a sale, &c.

From this decree, Marvin & Benedict appealed to this court.

KENT, (late Chancellor) assigned no reasons for the decree beyond the above, which were contained in the decree itself.

*J. V. Henry,* for the appellants.

*H. Bleecker,* for the respondent.

SAVAGE, Ch. Justice. (After entering at large into the facts.) There is no question of law in dispute; and but one of fact: and that seems to me to have been virtually conceded by the respondent in his bill. He admits the money was *advanced* to him; and was to have been applied on the mortgage. Now, when a debtor advances money to his creditor, which is intended to be applied upon the debt due, and is so received by the creditor, it is but another name for payment. An *advance* pre-supposes that the money is not payable at the time; but in this case it was due. The idea of a deposit, under such circumstances, seems to me extraordinary. The only answer to the admission on the record, and the declarations made to Burdick and Snell, is a promise to pay $500 on the mortgage, made under a belief, as it appears, that Cooper had property sufficient to pay the whole demand. This proves nothing as to the fact in dispute.

The money was clearly delivered in payment; and afterwards re-loaned; and however just it may be, that the lien should be revived as between mortgagor and mortgagee, the *bona fide* creditors of the mortgagor ought not to lose the benefit of their security, by the indulgence or negligence of the mortgagee.

When a debtor advances money to his creditor, both parties intending it to apply on the debt due, it is payment.

I am clearly of opinion that the decree of his Honor, the late Chancellor, be reversed.

SUTHERLAND, J. concurred.

WOODWORTH, J. not having heard the argument, gave no opinion.

COLDEN, Senator, delivered his opinion, substantially as follows : I should entirely concur in the decree of the late Chancellor, could I agree with him as to the proofs, that the one thousand dollars was not received or applied by Vedder as payment, but merely deposited for a short time and taken back by Cooper with Vedder's consent.

The Chancellor must be understood to speak of the time when Vedder received the money; and unquestionably we must refer to that time for the character of the transaction. If the thousand dollars were given to Vedder; and received by him as an absolute payment in the first instance, it is of no consequence whether it was afterwards taken back by Cooper, with Vedder's consent; or whether they, or either of them, when it was so taken back, intended and understood that it should not be applied as a payment.

*The intention at the time of payment is the question.*

[Here Mr. C. examined the pleadings and evidence.] I cannot find a single word, that appears to me to warrant the conclusion, that the money was deposited for a short time, and not received by Vedder as a payment. On the contrary, the proofs, arising either from the pleadings or the examinations, appear to me to be full and positive, that neither of the parties had any other idea than that the payment was absolute. The respondent's bill does not pretend that he received the money as a deposit; and the answer expressly and unequivocally denies that it was so received and insists upon a payment.

Independent of all testimony, how can we suppose that the one thousand dollars were intended by Cooper, or considered by Vedder as a deposit. The amount was due at the time; and unless an agreement between the parties that it should be considered a deposit be expressly proved, we must consider it a payment. It is very difficult to suppose

*Unless the contrary be proved, the delivery of the $1000 must be intended to have been in payment.*

that any good and honest reason should have existed why this money should have been held by Vedder as a deposit. If there was, in truth, any motive for leaving it in his hands for any purpose other than that payment, it was incumbent on the respondent to have shown this.

*The question is, can the lien be revived by a re-loan.*

Then the question which presents itself for our decision is, whether a mortgagee, who receives a payment on his mortgage, by which his lien on the mortgaged premises is diminished to the amount of the payment, can, at any time afterwards, at his pleasure, revive his lien for the previous amount, by a re-loan to the mortgagor, to the prejudice of a *bona fide* incumbrancer, whose incumbrance is subsequent to the mortgage, but prior to the re-loan.

*It cannot and why.*

I think a mortgagee has no power to do this; and I understand the late Chancellor to be of the same opinion. He assumes the fact that the one thousand dollars was intended by the parties merely as a deposit, while, as it appears to me, it is very fully proved to have been an absolute payment.

There seems to me no doubt, therefore, as to the law; and so far were the counsel for the respective parties agreed on this subject, that not a single authority was cited, at the bar, on either side.

If Vedder was at liberty to re-establish his lien by giving back the money to the mortgagor at the end of two or three days, he might have done so at the end of two or three years. This would hardly be contended; and yet I cannot perceive that the lapse of more or less time could make any difference as to the principle; nor can it make any difference whether the receipt of the money was endorsed or not.

*A receipt not necessary.*

I shall forbear, at this time, and on future occasions, to repeat expressions of the feelings of respect and deference with which I differ from the late Chancellor. No man more highly appreciates his learning and abilities than I do. But these are sentiments to which I am not at liberty, in my present situation, to sacrifice the convictions of my understanding. But in this case I have the less reluctance in giving an opinion in opposition to the decree; because in doing so, I do not differ from the court below on any law point. The case turns entirely upon the proofs; and requires but

very humble talents to examine these with an intention which a press of business or other causes, might have rendered it impossible for the Chancellor to bestow.

My opinion is, that the Chancellor's decree be reversed; and that the record be remitted, with instructions that the court below shall permit the appellants to redeem on payment of what may be due, after crediting the one thousand dollars as paid on the first of June, 1815; and that they be allowed their costs.

BOWMAN, BRAYTON, BURROWS, CLARK, CRAMER, DUDLEY, ELLSWORTH, GARDINER, GREENLY, HAIGHT, KEYES, M'INTYRE, MORGAN and WILKESON, Senators, concurred in the result of the opinions delivered by the Chief Justice, and COLDEN, Senator.

*For affirmance*, EARLL, LEFFERTS, LYNDE, MALLORY, M'MICHAEL, REDFIELD, WOOSTER and WRIGHT, Senators.

*A majority being for a reversal*, it was, thereupon, ORDERED, ADJUDGED and DECREED, that the decree of the late Chancellor should be, and the same was thereby reversed. And it was further ORDERED, ADJUDGED and DECREED, that the appellant should be permitted to redeem the mortgaged premises, upon payment of what was due to the respondent, for principal and interest, on the 12th day of November, 1819, giving credit for the sum of $1000, mentioned in the decree, and upon payment of the respondent's costs in the court below, until the coming in of the appellants' answer. And further, that the respondent should pay to the appellants, their costs in the said court, to be taxed, subsequent to the filing of their answer; and that the record, &c. should be remitted, &c.

*Margin notes:*
ALBANY, Dec. 1825.

Marvin v. Vedder

For reversal, 17; for affirmance, 8.