ISABELLA B. CLUTE, Appellant, *v.* ADAM EMMERICH, Respondent.

In 1863, H. purchased certain premises, giving back a mortgage of $6,000 for part of the purchase-money; he conveyed the premises in 1866 to J., subject to the mortgage which the grantee assumed and agreed to pay. J. paid the mortgage and the same was canceled of record; $5,500 of the money used in such payment was borrowed by J. she giving a mortgage on the premises to secure the loan. In 1867 the premises were conveyed to C. subject to the second mortgage, which C. assumed and agreed to pay. He did pay and discharge the same, using for that purpose $6,000, borrowed by him, to secure the payment of which he executed another mortgage upon the premises. In 1871, the premises were conveyed to defendant, he assuming and agreeing to pay the last mentioned mortgage. At the time H. purchased there was a judgment against him; and under a sale on execution issued on said judgment, defendant purchased said premises, and in 1869 received the sheriff's deed thereof. Searches were made by the various grantees and mortgagees but the judgment was not discovered because H. had a middle name, the initial of which was omitted in the docket of judgment, and none of said grantees and mortgagees had notice of the judgment prior to their receiving their respective deeds or mortgages. Defendant, subsequent to his purchase, paid the interest upon the mortgage, also repairs, taxes, assessments, etc. In an action of ejectment brought to recover possession of the premises and rents and profits, *held*, that plaintiff was entitled to recover; but that defendant was entitled to be allowed as an offset against the *mesne* profits the amount paid by him for interest, etc., and the $500 paid by J. upon the original mortgage; also *held*, that the mortgage last mentioned was a valid lien upon the premises, and that

plaintiff's title was subject thereto ; also that the fact that plaintiff purchased in good faith and in ignorance that the moneys used to pay each of the first two mortgages were loaned upon security of the mortgage succeeding it did not affect her rights or equities ; that she could get no better or stronger right than the judgment creditor would have, had he purchased.

(Argued May 5, 1885 ; decided June 9, 1885.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, entered upon an order made December 23, 1881, which affirmed, so far as appealed from, a judgment in favor of plaintiff, entered upon a decision of the court on trial without a jury. (Reported below, 26 Hun, 10.)

This was an action of ejectment to recover possession of certain premises in the city of New York and for *mesne* profits, etc.

Plaintiff claimed title under a sheriff's deed on sale under an execution. The court found in substance that a judgment was docketed in the county of New York on February 4, 1865, against Thomas Hall and another; the name of said defendant was Thomas A. Hall. Said Hall acquired title to the premises in question by deed dated November 20, 1863; he gave back to his grantor a mortgage thereon to secure $6,000 of the purchase-money, which mortgage was duly recorded. On June 19, 1866, Hall conveyed the premises to Jane B. Hyde, subject to said mortgage, which was assumed by said grantee as part of the purchase-price and which she covenanted to pay. On August 18, 1866, said Jane B. Hyde paid said mortgage and caused the same to be canceled of record, she using for that purpose in part the sum of $5,500 borrowed by her upon the security of a mortgage on the premises for that amount. After various *mesne* conveyances each made subject to said mortgage, the premises were on September 14, 1867, conveyed to Marks Cotrell subject to the mortgage executed by Jane B. Hyde, which the grantee assumed and agreed to pay as part of the purchase-price. On January 31, 1871, Cotrell paid said

mortgage and caused the same to be discharged of record, using for that purpose $6,000 borrowed by him of the Emigrant Industrial Savings Bank on security of a mortgage upon the premises. On October 21, 1871, the premises were conveyed to defendant subject to the last-mentioned mortgage, which he covenanted to and agreed to pay as part of the purchase-price. Defendant since said conveyance has been in possession of the premises, has paid the interest on the mortgage, and has paid taxes, assessments, etc. At the time of the conveyance mentioned the grantees and mortgagees caused searches to be made against Thomas A. Hall and obtained certificates of search to the effect in substance that no judgment had been recovered or docketed against said Thomas A. Hall; the judgment in question being omitted because recovered and docketed against Thomas Hall, and none of the grantees had actual notice of said judgment before they advanced their money and accepted conveyance. In October, 1867, an execution was duly issued upon said judgment, and Hall's interest in the premises at the date of the rendition of the judgment was sold under and by virtue thereof and bid in by the plaintiff, and the same not having been redeemed, plaintiff received the sheriff's deed thereof, which was recorded February 26, 1869. Said Marks Cotrell, while owner of the premises, had actual notice of the execution sale and of plaintiff's title.

The court found as conclusion of law that the judgment attached as a valid lien upon the property on February 4, 1865, and that plaintiff, under and by virtue of the sheriff's deed, became seized in fee of the premises and entitled to its possession and also to the *mesne* profits, but that defendant was entitled to have deducted from such *mesne* profits the interest, taxes, assessments and water-rates and sums paid by her for repairs, also the $500 paid by Jane B. Hyde upon the original mortgage, also that the mortgage given to the savings bank was a valid lien upon the premises, and that plaintiff's title was subject thereto. Plaintiff appealed from so much of the judgment as allowed the set-off, and declared the mortgage to be a valid lien.

*Thomas J. Clute* for appellant.  Hall's title and that of all the subsequent grantees, and mortgagees, and lienors, are by the Low judgment, execution and sale, extinguished in law and in equity.  All of them become strangers to the title, and Mrs. Clute holds in her own right, for her own use and benefit, adversely to them and to the rest of the world.  (*Hetzel* v. *Barber*, 69 N. Y. 9, 10; *Winlock* v. *Hardy*, 4 Litt. 272; *Averill* v. *Wilson*, 4 Barb. 180; *Osterhout* v. *Shoemaker*, 8 Hill, 518.)  Mrs. Hyde, having assumed the payment of the Chamberlain mortgage, was a purchaser for cash.  (*Bartlett* v. *Musliner*, 28 Hun, 239.)  Such payment absolutely extinguished both the mortgage and the debt.  (*Eddy* v. *Traver*, 6 Page's Ch. 521; *Taylor* v. *Baldwin*, 10 Barb. 626; *James* v. *Morey*, 2 Cow. 246; *Sandford* v. *McLean*, 3 Paige's Ch. 122; *Marvin* v. *Vedder*, 5 Cow. 671; *Banta* v. *Garmo*, 1 Sandf. Ch. 383; *Wilkes* v. *Harper*, 1 N. Y. 586; *Bank U. S.* v. *Winston's Exrs.*, 2 Breck. 252; *Tarbell* v. *Parker*, 101 Mass. 165; *Schakelford* v. *Stockton*, 6 B. Monr. [Ky.] 390; *Burr* v. *Smith*, 21 Barb. 262; *Swan* v. *Patterson*, 7 Md. 164.)  The right to be substituted and the intention to purchase must both concur to make a case of subrogation, otherwise even payment by a security will be extinguishment of the debt.  (*Craft* v. *Poole*, 9 Watts, 457; *Kuhn* v. *North*, 10 S. & R. 399; *Eddy* v. *Traver*, 6 Paige, 521; *Baldwin* v. *Moffett*, 94 N. Y. 85.)  A purchaser cannot be subrogated to the benefit of an incumbrance he has agreed to pay.  (*Thompson* v. *Hayward*, 129 Mass. 401; *Walsh* v. *Wilson*, 130 id. 134; *Cole* v. *Malcom*, 66 N. Y. 364; *Wilson* v. *Benton*, 52 Vt. 394; *Carlton* v. *Jackson*, 121 Mass. 592; *Garwood* v. *Eldridge*, 2 N. J. Eq. 145; *Wade* v. *Baldwin*, 40 Mo. 486.)  Where subrogation would result in any injury or injustice to the rights of others, the courts will not allow it.  (*Keely* v. *Cassidy*, 93 Penn. St. 318; *Hatch* v. *Kimball*, 16 Me. 146; *Reilly* v. *Mager*, 12 N. J. Eq. 55; *Bender* v. *George*, 92 Penn. St. 36; 91 id. 78; 32 id. 103; 16 id. 445; *Mosier's Appeal*, 56 id. 76.)  Where one who has no interest to be protected pays a charge on property, he cannot be subrogated to the lien of the charge he has paid,

against an intervening incumbrance on the property. (*Downer* v. *Wilson*, 33 Vt. 1; *Wood* v. *Wilson*, 17 Ill. 218; *Wilson* v. *Loper*, 44 Me. 287.) Where a mortgagee has understandingly and intentionally discharged his mortgage, it cannot afterward be reinstated to the prejudice of subsequent incumbrancers. (*Frazee* v. *Inslee*, 1 Green [N. J. Eq.], 239; *Neidig* v. *Whitford*, 29 Md. 178; *Banta* v. *Garmo*, 1 Sandf. Ch. 383; *Lasalle* v. *Barnett*, 1 Blatchf. [Ind.] 150; *Atkinson* v. *Augert*, 46 Mo. 515; *Westfall* v. *Hintzee*, 7 Abb. N. C. 236; *Woolen* v. *Hillen*, 9 Gill [Md.], 185; *Stearns* v. *Godfrey*, 16 Me. 185; *Hinchman* v. *Emans*, 1 N. J. Eq. 100; *Iowa Co.* v. *Foster*, 49 id. 676; *Kitchell* v. *Mudgett*, 37 Mich. 82; *Stearns* v. *Godfrey*, 16 Me. 158; *Marsh* v. *Pike*, 10 Paige's Ch. 595; *Cornell* v. *Prescott*, 2 Barb. 17; *Thompson* v. *Thompson*, 4 Ohio [N. S.], 333; *Thompson* v. *Haywood*, 129 Mass. 401; *Walsh* v. *Wilson*, 130 id. 134; *Wilson* v. *Benton*, 52 Vt. 394; *Dunning* v. *Leavitt*, 85 N. Y. 35; *Vrooman* v. *Turner*, 69 id. 280.) So far as Mrs. Clute is concerned, it is immaterial whether the defendant made any search or not, she cannot be affected by the good faith or by any mistake or omission, act or neglect of the defendant, or of his grantors, or prior mortgagees. (*Van Rensselaer.* v. *Clark*, 17 Weekly Rep. 25; *Jackson* v. *Post*, 15 id. 588; *Tuttle* v. *Jackson*, 6 id. 226; *Decker* v. *Boice*, 83 N. Y. 215; *Murray* v. *Ballou*, 1 Johns. Ch. 566; *Craft* v. *Wood*, 3 Hun, 571; *Bacon* v. *Van Schoonhoven*, 87 N. Y. 446; *Jackson* v. *Horn*, 19 Johns. 83; *Ledyard* v. *Butler*, 9 Paige's Ch. 136; *Howard Ins. Co.* v. *Halsey*, 4 Seld. 271; 4 Sandf. Ch. 563; *Stuyvesant* v. *Howe*, 1 id. 419; *Shirr* v. *Budd*, 14 N. J. Eq. 234; *Webster's Appeal*, 86 Penn. St. 409; *Gray* v. *Du Upa*, 16 Cal. 195; *Boice* v. *Watkins*, 30 La. 21; *Wood* v. *Gilson*, 17 Ill. 218; *Kitchell* v. *Mudgett*, 37 Mich. 82; *Tarbell* v. *Parker*, 101 Mass. 165; *Schackleford* v. *Stockton*, 6 B. Monr. [Ky.] 390.) Cottrell had actual notice of Mrs. Clute's title several months before he paid off the Pearsall mortgage, and such payment must be considered voluntary on his part; he was not personally liable or bound either legally or equitably to pay the mortgage by reason of the covenant in

the deed from Hefferan to him, to assume its payment. (*Trat-ten* v. *Hughes*, 12 N. Y. 74; *Belmont* v. *Cowan*, 22 id. 438; *Hamil* v. *Gillispie*, 48 id. 559; *Smith* v. *Truslow*, 84 id. 660; *Kilmer* v. *Smith*, 77 id. 226; *Vrooman* v. *Turner*, 69 id. 280.) The defendant was not a *bona fide* occupant of the land, and the law charges him with bad faith, and he ought not to be permitted to mitigate the plaintiff's damage, by offsetting the value of his improvement. (*Hill* v. *Pixley*, 63 Barb. 203; *Woodhull* v. *Rosenthal*, 61 N. Y. 396; *Wood* v. *Wood*, 83 id. 581; *Putnam* v. *Richie*, 6 Paige, 405; *Westmore* v. *Roberts*, 10 How. Pr. 52; 2 Story's Eq. Jur., § 799, *a* and *b*, 1237, '8 ; *Graham* v. *V. & N. C. R. Co.*, 86 Ind. 463; *Washburn* v. *Spoat*, 16 Mass. 449; *Mumford* v. *Brown*, 6 Cow. 475; *Taylor* v. *Baldwin*, 10 Barb. 632.) A lien once extinguished in law cannot be revived. (*Ex parte Elwood*, 1 Denio, 633; *McCammon* v. *Worrall*, 11 Paige, 99; *Middle D. Bk.* v. *Deyo*, 6 Cowen, 732.) The deed to the defendant is absolutely void under the statute, and at common law. (2 R. S. [4th ed.], § 81, p. 495; *Jackson* v. *Brinkerhoff*, 3 Johns. Cases, 101; 2 R. S., § 160, p. 142.) A claim of title to land which could not be set up by a person while in possession cannot be set up by another person who comes into possession under him. (*Jackson* v. *Hardee*, 4 Johns. 202; *Jackson* v. *Bush*, 10 id. 223; *Jackson* v. *Kimman*, id. 292; *Mosely* v. *Mosely*, 15 N. Y. 336.) The defendant, having denied the plaintiff's legal title to the land, cannot be permitted to set up an equitable defense, looking to affirmative relief. (*Jackson* v. *Webb*, 4 Sandf. 653.) Constructive notice by the record is equivalent to actual notice. (Pom. Eq. Jur. 97, 98; *Bancroft* v. *Consen*, 13 Allen, 50; *Orvis* v. *Newell*, 17 Conn. 97; *Bush* v. *Golden*, id. 594; *Harrison* v. *Cachelin*, 23 Mo. 117, 127; *Meish* v. *Sunderland*, 6 Cal. 297; *Young* v. *Wilson*, 27 N. Y. 351; *Dimon* v. *Dunn*, 15 id. 498; *Viele* v. *Judson*, 82 id. 32; *Thompson* v. *Wilcox*, 7 Lans. 376.) Mrs. Hyde having assumed the payment of the Hall mortgage as part payment of her purchase, thereby became the principal debtor for the debt, and could not pay off the charge, and in any manner or by any form of transfer keep it alive, and the

payment by her necessarily amounted to a discharge. (2 Pom. Eq. Jur., § 797; *Michles* v. *Townsend*, 18 N. Y. 578; *Russell* v. *Pistor*, 7 id. 171; *Fitch* v. *Cothead*, 2 Sandf. Ch. 29; *Lilly* v. *Palmer*, 51 Ill. 331; *Frey* v. *Vanderhoof*, 15 Wis. 307.) Where a lien of a subsequent judgment is subject to an outstanding equity, if the judgment is enforced at the sheriff's sale, and the judgment debtor's land is sold and conveyed to a *bona fide* purchaser for a valuable consideration, and without any notice, he stands in the position of any other *bona fide* purchaser who acquires the legal estate, and takes the land free from any unrecorded mortgage, and any outstanding equitable interest or lien not appearing of record. (2 Pom. Eq. Jur. 180; *Wood* v. *Chapin*, 13 N. Y. 509; *Gower* v. *Doheney*, 33 Iowa, 369; *Halloway* v. *Palmer*, 20 id. 121; *Jackson* v. *Chamberlain*, 8 Wend. 620.)

*Bartholomew Skaats* for respondent. Equity entitles the defendant as well as the bank as mortgagees of Cottrell to sub- rogation. (*Downer* v. *Fox*, 5 Washb. [Vt.] 388; *Planters' Bk.* v. *Dobson*, 9 Smedes & M. 527; *Pelt* v. *Bears*, 4 Ind. 46; *Fisher* v. *Johnson*, 5 id. 492; *Robinson* v. *Stuart*, 10 N. Y. 189; *Wilkes* v. *Harper*, 2 Barb. Ch. 338; *Cole* v. *Malcom*, 66 N. Y. 363; 2 Story's Eq. Jur., § 1227; *Bright* v. *Boyd*, 1 Story, 478; *Mickles* v. *Dillaye*, 17 N. Y. 80; *Ellsworth* v. *Lockwood*, 42 id. 89.) The presumption of notice from the purchaser having knowledge sufficient to put him on inquiry may be repelled by proof that he failed to discover the prior right, notwithstanding the exercise of due diligence on his part. (*Williamson* v. *Brown*, 15 N. Y. 354; *Le Neve* v. *Le Neve*, 2 Lead. Cas. Eq. 160.) Any knowledge or notice, actual or con- structive, which Marks Cottrell may have had of plaintiff's title, when he paid the Hyde mortgage and conveyed to defendant, cannot affect the latter, who is a purchaser for value without notice, nor can it affect the bank as mortgagees. (2 Lead. Cas. Eq. 40; *Jackson* v. *Given*, 8 Johns. 137; *Varick* v. *Briggs*, 6 Paige, 323.) The plaintiff, by the sheriff's deed, took only the right, title and interest of Hall in the premises at the time

judgment was entered against him in February, 1865, or which he had at any time thereafter. (*Frost* v. *Yonkers S. Bk.*, 70 N. Y. 553; *Sisson* v. *Hibbard*, 75 id. 542; *Lamont* v. *Cheshire*, 65 id. 30.) The purchaser of an equitable estate, merely, is subject to existing equities and will not be recognized as a *bona fide* purchaser. (*Spiras* v. *Craig*, 7 Cranch, 34; *Vattier* v. *Heunde*, 7 Pet. 252; *Bragg* v. *Paulk*, 42 Me. 502; 2 Lead. Cas. Eq. 72, 89, 90; *Taylor* v. *Chamberlain*, 3 Paige, 217; *In re Howe*, 1 id. 125; *White* v. *Carpenter*, 2 id. 217; *Rodgers* v. *Bonner*, 45 N. Y. 379; *Moyer* v. *Heinman*, 13 id. 180; *Sieman* v. *Schurch*, 29 id. 598; *Ells* v. *Tousley*, 1 Paige, 280; *Tuttle* v. *Jackson*, 6 Wend. 613; *Jackson* v. *Post*, 15 id. 588; *Hooker* v. *Pierce*, 2 Hill, 650; *Brown* v. *Volkening*, 64 N. Y. 76; 2 Lead. Cas. Eq. 101; *Frost* v. *Yonkers S. Bk.*, 70 N. Y. 553.) Although the defendant actually assumed to pay the mortgage of Cottrell, who assumed to pay the Hyde mortgage, and, although Mrs. Hyde in turn assumed to pay the Hall mortgage, such assumption, or in fact, any personal liability on their part to pay said mortgages, is not essential to entitle the defendant to the subrogation sought for by him. (*Parkinson* v. *Sherman*, 74 N. Y. 88; *Johnson* v. *Zink*, 51 id. 338; *Twombly* v. *Cassidy*, 82 id. 155; *Cole* v. *Malcolm*, 66 id. 363; 2 Story's Eq. Jur., § 1227; *Bright* v. *Boyd*, 1 Story, 488; *Smith* v. *Robertson*, 89 N. Y. 555; *Barnes* v. *Mott*, 64 id. 397.)

FINCH, J. Very numerous answers to the careful and elaborate opinion of DANIELS, J., at the Special Term, and which the General Term approved and adopted, have been presented for our consideration, and fortified by a copious citation of authorities. Selecting out those which seem most plausible and are confidently urged, we may confine what needs to be said to their discussion without useless repetition of the argument which has thus far prevailed.

1. The judgment rendered is criticised as in direct violation of the Recording Acts. That Mrs. Clute bought the property at a sale on execution, when the prior Chamberlain mortgage

was discharged of record; that she became such purchaser in good faith and for value, as the trial court expressly found; and that a practical revival of the satisfied mortgage sweeps away the protection of the record, and works gross injustice to one who has trusted to it; is the substantial argument made. But we do not see that the Recording Acts affect the question. Whatever of good faith attended Mrs. Clute's purchase at the execution sale, she could gain by it no better or stronger right than the creditor would have got if he had been the purchaser. (*Frost* v. *Yonkers Savings Bank*, 70 N. Y. 553.) She took only what the judgment could give, and bought at the peril of disappointment as to the existence or scope of its lien. The maxim of *caveat emptor* applied to her purchase, and she has no ground of complaint if she is given an interest in the land precisely commensurate with the actual lien of the judgment under which she bought. The record told her that such lien was only upon Hall's equity of redemption and was subject when obtained to the prior Chamberlain mortgage. The judgment creditor had no equitable right to any thing more. If more came by an enlargement of the lien, that was simply the creditor's good fortune; if it did not so come, the good fortune vanished, but no right of the creditor was invaded. Mrs. Clute's purchase, therefore, gave her, outside of her legal right, no equity to have the property freed from the incumbrance to which the judgment itself was subject. Her struggle is to retain the benefit of an accidental and unintended extension of the judgment lien, to which she was in no way equitably entitled, at the expense of others acting in ignorance and through mistake.

2. It is further contended that the judgment appealed from carries the doctrine of subrogation beyond any recognized limit; that the savings bank holding the final mortgage was a mere volunteer, advancing its money without compulsion or necessity, and that it was error to make the mortgage as the final form of a continuous debt a lien upon the premises, having priority over the sheriff's deed. Two cases are specially relied on as the basis of this contention. (*Marvin* v. *Vedder*,

5 Cow. 671; *Banta* v. *Garmo*, 1 Sandf. Ch. 383.) They hold that a mere volunteer cannot be subrogated, and we have quite recently admitted the doctrine to be sound. (*Acer* v. *Hotchkiss*, 97 N. Y. 403.) But it is not the savings bank which is invoking equitable interference. It is not even a party to this action, although benefit may result to it from justice done to others. The defendant, sued in ejectment and certain to lose his land, resists the claim of mesne profits and the complete recovery sought, by himself invoking the doctrine of subrogation. It is Emmerich and his grantors who have paid the interest upon the outstanding incumbrance, in ignorance that the title had been sapped, and wasting their money without return, and it is the defendant who brings his trouble into equity and seeks its aid. He is no mere volunteer. He was in possession of the land as owner, supposing his title to be perfect. He had covenanted to pay the bank mortgage, and parted with his money in good faith and to protect his title. In no sense were his payments voluntary, and in every particular he stood within the rule of subrogation. But it is said that he could defend against his covenant as it respects any future liability by reason of his eviction (*Dunning* v. *Leavitt*, 85 N. Y. 35), and so the amount unpaid cannot be made a lien for his benefit. Possibly he might so defend; but is he bound to set up such defense and repudiate his covenant for the pure profit and benefit of a plaintiff having no equitable right to such profit? If Emmerich can escape his liability by two modes of procedure, one of which throws the loss where it belongs, and the other of which lands it upon innocent parties, may he not choose the former? If he decides to abide by his covenant and not resist it, at least the plaintiff may not complain. But Emmerich, by his deed, obtained all the rights of Marks Cottrell, and he at all events remains liable upon his bond to the bank, and himself paid off the Pearsall mortgage with the new loan, and his equity has become defendant's.

3. It is said that Marks Cottrell had actual notice of plaintiff's title before he paid off the Pearsall mortgage, and that defendant had such notice in 1874. The findings are to that

effect, but they show also that each party had no such actual knowledge until after their conveyances were taken, and they had become bound by their covenants to pay off the mortgage incumbrance. The contention amounts to this, that they were bound to repudiate their covenants and throw the loss upon innocent third parties for the benefit of one whose sole right was subject in equity to the payment of the debt.

4. But it is added that Marks Cottrell, after the sheriff's deed to Mrs. Clute, had nothing to convey, and could not transfer any right or title to Denis Cottrell which might pass to the defendant; and that Marks Cottrell could not indirectly, by a mortgage upon land which he did not own, cut off Mrs. Clute's title. All this assumes that her title was something more than it really was, and puts its accidental and mistaken extension in the place and stead of its real lien. Marks Cottrell was in possession when he conveyed to Denis, and his deed was at least effective to transfer that possession and whatever equitable rights he had as against the legal title obtained by plaintiff. That legal title is not here assailed or destroyed. Equity has simply taken its measure, and allowed it to prevail to its lawful extent, and, in justice to complaining parties, compelled it to operate solely within its own proper and just boundaries.

5. It is also insisted, both as to Mrs. Hyde and Marks Cottrell as well as to defendant, that they had covenanted and agreed to pay off the mortgage debt, and that one cannot be subrogated to a debt for which he is primarily liable, and which it is his duty to pay. That is only another mode of saying that one cannot be subrogated who has no equity, and is quite true without affecting the case here presented. It was not their duty to pay as against the judgment creditor, and it was his duty and his debt if he became owner under the judgment. As between these grantees and the creditor, the mortgage debt was the prior lien and to be taken out of the land, leaving the judgment to take the residue; and in no just sense can it be said, as against one claiming under the judgment, that the owners of the fee were bound to pay off the incumbrance. While they had agreed to do so as to other parties, and as to

them were primarily liable, they stood in no such relation to the plaintiff, and owed her no such duty.

The foregoing are the principal objections taken to the conclusions of the court below. There were many others, but largely dependent upon those discussed. The general principles involved in the decision have been sufficiently vindicated by the opinion of the Special Term, to which we have already referred.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.