JULIA R. DRAKE, RESPONDENT, *v.* CLINTON F. PAIGE, APPELLANT, IMPLEADED WITH LEWIS B. PAIGE AND OTHERS.

*Partition suit — rights acquired under a mortgage given by one of several devisees upon his undivided interest in the residue — when not subject to a deduction of the amount improperly taken by the mortgagor, one of the executors, from the estate.*

In an action, brought for the partition of certain land devised to the several parties to the action by the will of their father, it appeared that one of the devisees, Lewis, by mortgage from whom the plaintiff claimed an interest in the premises, was also executor under the will of the testator; that, by conveyance of other lands made by himself and his co-executor, Lewis had come into possession of a larger amount of money belonging to the estate than his entire interest therein.

It also appeared that Lewis had subsequently executed to one Drake a mortgage for $60,000 upon his one-fourth interest in the residuary estate of his testator, (the parcels being specifically described, and including the premises sought to be partitioned) for the purpose of securing Drake against liabilities assumed by the latter, and in consideration of Drake's agreeing to take care of and protect the property of Lewis from the enforcement of judgments recovered against him; that, in pursuance of such agreement, Drake had paid Lewis' notes, on which he was indorser, and had taken up judgments which had been recovered against Lewis. The latter Drake had not satisfied, but had caused a portion thereof to be assigned to himself and a portion to his wife. All of these judgments had been a lien on the one-fourth interest, which Lewis took under the will and mortgaged to Drake, but before the trial of this action were barred by the statute of limitations.

It also appeared that Drake took such mortgage in good faith, for the purposes mentioned in the agreement, without any knowledge of the fact that Lewis had appropriated to his own use the proceeds derived from the sale of other lands belonging to the estate.

*Held,* that the rights acquired by Drake under such mortgage were superior to the claims existing on the part of Lewis' co-tenants, claiming an undivided interest with Lewis in the lands devised by their testator, for the deduction, from the share of Lewis in the estate, of the amount which had been improperly taken from the estate by Lewis.

That the general rule that a person having a partial interest in the estate, and being an actor in a breach of trust with respect to such estate, thereby subordinates his rights therein to the claims of others having an interest in such estate with him, whose rights and interests are prejudiced by his breach of trust, did not apply to the present case, so far as concerned the rights of Drake, who, as a purchaser for value, without notice of the breach of trust on the part of his mortgagor, was entitled to enforce his rights in priority to those of the co-tenants of his mortgagor.

*Clapp* v. *Meserole* (1 Keyes, 281) distinguished.

That the fact that Drake, instead of satisfying the judgments against his mortgagor, had caused them to be assigned to himself and wife, did not affect his rights in the premises.

*Semble,* That, to the extent of the judgments which were liens upon Lewis' interest in the real estate and were taken up by Drake, the latter would be entitled to be subrogated to the benefit of such liens as against other claimants.

APPEAL by the defendant Clinton F. Paige from a judgment, entered upon the report of a referee in the office of the clerk of the county of Broome ·on the 25th day of October, 1888 in an action brought for the partition of certain real estate.

The plaintiff, in her amended complaint, alleged that she and the defendants Jane L. Paige, Lewis B. Paige and Edith Paige, and Clinton F. Paige, as trustee for Lewis B. Paige, own and possess, as tenants in common, certain four parcels of real estate therein described; that the plaintiff owns an undivided three-fourths interest in fee ; that Caroline L. Paige owned the other one-fourth, and she died intestate, in 1879, leaving her surviving a husband, the defendant Clinton F. Paige, and three children, the said Jane L., Lewis B. and Edith, to whom the fee of said one-fourth descended; that Lewis B., after the death of his mother and in 1879, conveyed his interest to Clinton F. Paige in trust for certain purposes; that Clinton F. Paige is tenant by the curtesy of an undivided fourth ; that the parties own no other lands in common, and there are no specific liens or incumbrances upon the premises or the shares thereof against any of the parties ; that Clinton F. Paige is the *executor of the will of Hazard Lewis,* deceased, and, as such executor, or in his individual capacity, has for many years received the rents and profits of said premises and not paid them over. Judgment was asked for a partition and that Clinton F. Paige, as executor or individually, account for the rents and profits.

The defendant Clinton F. Paige, personally and as trustee, answered, denying any knowledge or information sufficient to form a belief as to the ownership by plaintiff of three-fourths, and alleging that the premises were originally owned by Hazard Lewis and were by him devised, after the payment of debts, funeral and testamentary expenses, to his wife Maria Lewis, and to his daughters Jane E. Drake and Caroline L. Paige, and to his son Frederick Lewis, to be equally divided between them, each to have one-fourth part thereof ;

that by said will the executors were authorized to sell and convey said real estate, or partition the same, or sell and divide the proceeds; that Frederick Lewis, Clinton F. Paige and Horace S. Griswold were made executors; that Frederick Lewis, during the time he held the premises so devised to him, being one-fourth of the premises herein, appropriated and converted to his own individual use a large amount of the estate moneys which came into his hands as executor and trustee, which became and is a lien upon his one-fourth interest in said real estate, superior to any right acquired by the plaintiff, and that Frederick Lewis is a necessary party defendant.

The answer further alleged that Clinton F. Paige, upon the death of Caroline L. Paige, became and is entitled, as tenant by the curtesy, to the use during his life of all the premises owned by said Caroline.

It further alleged that he, upon the request of the owners and as their agent for a number of years, took charge of said premises, spending much time and money in their care and preservation, and paid out the avails as directed by the owners, and that his services and payments were equal to the receipts; that prior to the death of said Caroline he had no estate or legal interest in the lands, and all that was done by him was as agent of the owners, and more than six years have elapsed since such receipts; that the matter of the use and occupation has been litigated and settled in the Surrogate's Court upon the accounting of the executors.

Upon the trial it appeared that Hazard Lewis was the original owner of the property. He died July 3, 1863, leaving a will which was duly probated on July 15, 1863. In this will, after certain specific bequests and devises to his widow and children, there came the following clauses:

"*Eighth.* All the rest and residue of my estate, whether real or personal, of every name, kind and description, and wheresoever situate, after the payment of my just debts and funeral and testamentary expenses, I give, devise and bequeath to my said wife Maria, to my said daughters Jane E. Drake and Caroline L. Paige, and to my said son Frederick, to be divided equally between them, share and share alike, each of said four persons to have one fourth part thereof.

"*Ninth.* I hereby authorize and empower my executors, hereinafter named, to sell, deed, grant and convey by deed, under seal,

with common covenants of warranty, any or all of my real estate not in this will particularly described and devised, and the avails apply to the payment of my debts and funeral and testamentary expenses; or, at their discretion, to lease any portion of such real estate for the purpose of paying such debts and expenses; and I authorize them to partition the same after the payment of debts and expenses, amongst those in the eighth devise herein named, or to sell and deed the same, and the avails divide [among those named in said devise and bequest eight.

" My intent is that all devises, of every name and kind in this will contained, shall pass the real estate to the respective beneficiaries free from incumbrance, and that any and all mortgages and judgments on either of them that shall cover or be a lien upon any of the lands, or any portion of the lands in this will devised and described, shall be paid by my executors from the avails of my personal estate not herein bequeathed, and the avails of lands not specifically devised. And I hereby direct and empower my said excutors to appropriate the avails of my personal estate not herein bequeathed and the avails of my real estate not in this will devised by specific description, to the payment of all mortgages and all judgments encumbering any and all real estate in this will devised."

Jane E. Drake, named in the eighth clause, died on the 12th of May, 1883, and the plaintiff is now the owner of her one-fourth; the plaintiff is also the owner of the one-fourth given to Maria Lewis. No question is made on this appeal as to those two-fourths. In the will, Frederick Lewis, Clinton F. Paige and Horace S. Griswold were named executors, and letters were issued to them. Griswold continued to act till August 9, 1870, when he died; Frederick Lewis continued to act until August 23, 1873, when he resigned; Clinton F. Paige still continues an executor. About February 4, 1875, the Supreme Court, upon petition, appointed Patrick H. Drake, husband of said Jane E. Drake, an executor and trustee, and he continued to act with Paige until November 5, 1882, when he died. On April 1, 1871, Lewis and Paige, as executors, sold and conveyed to one Morgan, a tract of land, not specifically devised by said will, for $9,000, of which $2,000 was paid down to Lewis, and a bond and mortgage given to the executors for the balance, $7,000, with interest. This bond and mortgage were

held as part of the estate until October, 1872, when they were assigned by the executors to one Root, the assignment being dated October 9, 1872, and acknowledged October 21, 1872. Nothing has been paid on the bond and mortgage. It is found by the referee that Lewis was in embarrassed circumstances at the time, and desired to dispose of the bond and mortgage for the purpose of raising money to be used or applied to his individual use; that Paige had knowledge at the time of such desire and purpose on the part of Lewis, and joined with him in executing and acknowledging the assignment that such purpose might be carried into effect; that the bond and mortgage were thus transferred to Root, and the avails received by Lewis, and he charged himself with the amount thereof upon the books wherein he kept his accounts as executor.

On the 26th of March, 1872, Lewis and Paige, as executors, sold and conveyed to one King a tract of land, not specifically devised, for $4,500, and King gave back to them a bond and mortgage for that amount, which, on February 5, 1873, was reduced by payment to Lewis to the sum of $3,600, and interest from April 1, 1873. This bond and mortgage the executors, by assignment dated and acknowledged March 4, 1873, assigned to one Hall. The referee finds that this assignment was made for the purpose of enabling Lewis to raise money to be used by him for his individual benefit; that Paige knew of such purpose on the part of Lewis at the time, and joined in executing and acknowledging the assignment that such purpose might be carried into effect, and the bond and mortgage were transferred accordingly and the avails were received and applied by Lewis to his own individual use and benefit; that at this time the estate was still quite largely in debt; that the transfers to Root and Hall were not made for the purpose of partitioning or dividing any portion of the residuary estate, or that Lewis might receive his share or any portion thereof; that Lewis when he appropriated the avails of said mortgages intended to replace and return to the estate the money thus taken by him.

On the 3d of June, 1873, Frederick Lewis and Maria A., his wife, executed and delivered to Patrick H. Drake a mortgage for $60,000 upon the one-fourth interest of said Frederick in the said residuary estate, the parcels being specifically described, and on other real estate owned by him. This included the premises described in the

complaint.    This mortgage was recorded June 4, 1873.    As a part
of the transaction an agreement was given back to Lewis, signed by
Drake and dated June 4, 1873, which stated that the mortgage was
given to secure Drake "against all liability he has or may have
incurred as indorser for the said Lewis," the amount being supposed
to be about $32,000; also to secure Drake for advances which he
is to make to liquidate and satisfy the large amount of judgments
against the said Lewis, which are a lien upon the property covered
by the said mortgage, Drake agreeing "to take care and protect
the said Lewis and his property from the enforcement of any of the
judgments against the said Lewis or his property, and save the prop-
erty of the said Lewis from sacrifice and the said Lewis from damage
and costs."    The referee found that the amount of paper upon which
Drake was indorser for Lewis at the time of the mortgage was
from $20,000 to $30,000; that the judgments against Lewis, for which
Drake was to make advances and which he was to take up, amounted to
$31,631.10, with interest; that Drake, in pursuance of the mortgage
and agreement, paid the said notes on which he was indorser, and
paid and took up the said judgments, which, however, he did not
have satisfied, but caused a portion to be assigned to his wife Jane
E. Drake, and the remainder to himself; that all the said judgments
were a lien on the one-fourth interest which Lewis took under the
will and mortgaged to Drake; that about $23,000 of said judg-
ments were a lien on such one-fourth interest at the time of the
assignment of the Morgan mortgage to Root in October, 1872;
*that Drake when he received his mortgage did not know that Lewis*
had received any more than his share of the said estate, nor did he
know of the sales made by Lewis and Paige to Morgan and King,
or that the Morgan and King mortgages had been disposed of and
the avails appropriated by Lewis; that Drake took his mortgage in
good faith for the purposes in his agreement, without notice of any
secret lien against or upon the interest of Lewis in the residuary
estate.    Default being made in the payment of this mortgage, it
was foreclosed and the premises sold on 6th of November, 1875, and
bid in by Drake.    The referee found that Drake was a purchaser in
good faith.    The one-fourth interest of the parcels described in the
complaint brought $7,250.    The entire proceeds of the mortgage

sale were about $24,000. The plaintiff has the title acquired by Drake on this foreclosure. At the time of the commencement of this action all the debts and liabilities, funeral and testamentary expenses, and all incumbrances and liens upon or against said Hazard Lewis, had been paid.

On the 13th of December, 1880, proceedings were commenced in the Surrogate's Court for an accounting of the executors, which resulted in a decree on the 16th of May, 1887. From this it appears that the executors had received large amounts from the proceeds of sales of real estate, as well as from personal property and from rents, and that Frederick Lewis, aside from the Morgan and King mortgages, had received more than his share of the funds received by the executors. The surrogate charged him solely as of the date of the decree (which included a large amount of interest), with the sum of $24,215.85, and credited him with his share, $20,350.97, leaving a balance of $3,864.88, which was decreed to be paid to the other residuary legatees or their representatives. He charged Lewis and Paige, together, with the amount of the said Morgan and King mortgages, $10,600, amounting altogether to $21,644.75 at date of decree, and directed that they pay the same as follows: To Maria Lewis, $11,128.39; to Julia R. Drake, as executrix of Jane A. Drake, $7,201.73, and to the administrators of the estate of Caroline L. Paige, $3,314.43. Frederick Lewis is insolvent, and has been since the spring of 1873, and no part of the balance charged to him and Paige, together, can be collected of him. Paige appealed from the decree, and pending that and this partition suit, and on September 7, 1887, the plaintiff and said Paige entered into a stipulation in writing which, after reciting the provisions of said decree, proceeded as follows: "Clinton F. Paige has appealed from said decree which is pending. There is also an action of partition pending to partition the real estate in which Julia R. Drake and the heirs of Caroline L. Paige and Clinton F. Paige claim an interest. Julia R. claiming absolute title to the share of undisposed residuary real estate formerly belonging to F. Lewis, and C. F. Paige claiming the same should first be charged with payment of the deficiency of F. Lewis, with which Lewis and Paige are jointly charged, which is one of the principal questions litigated. Mutual talk of compromise has occurred, to which C. F. Paige assents, viz.: That the sum payable

to Julia R. Drake by said decree shall, subject to the provisions hereafter named, be paid or secured to her, a cash payment of at least $3,000 to be made, and the balance secured to be paid at some agreed time. That Paige shall be released and excused from the payment of any part of the sum of $14,107.71, payable by said decree to Maria Lewis, and shall be left to settle himself with the heirs of Caroline L. Paige, D. H. Carver, for the $300 costs and all other matters involved in the decree, and the executions now in the sheriff's hands shall be withdrawn, and said decree, by suitable indorsement, be satisfied and receipted as to the interest of Julia R. Drake and Maria Lewis. It is also further provided that all claim of C. F. Paige and others to charge the interest of Frederick Lewis in the residuary real estate is waived, except that it is understood that he is to have the right to seek to charge the same and be subrogated in the place of said Lewis as to the sum of $7,189.97, being the sum paid by him to Julia R. Drake on account of the $21,644.75 charged to him and Lewis, jointly, for money received and used by said Lewis, with interest thereon, all the rest of said $21,644.75 being satisfied by this agreement."

The referee decided against the claim of Paige for subrogation, and held that the plaintiff was the owner of three-fourths; that the other fourth, being that taken by Caroline L. Paige under the will, was owned by the defendants Jane L. Paige, Edith Paige, and Clinton F. Paige, as trustee of Lewis B. Paige, and that in this fourth Clinton F. had a tenancy by the curtesy. An actual partition was directed. The record indicates that Frederick Lewis and wife have been made parties defendant by amendment.

*Alexander Cumming*, for the appellant.

*T. C. Millard*, for the respondent.

MERWIN, J.:

The only question before us is whether Clinton F. Paige has a lien or charge on the one-fourth interest of Frederick Lewis, acquired by plaintiff through the foreclosure of the mortgage of June 3, 1873, for the amount he was compelled to pay by reason of the appropriation by Frederick Lewis of the Morgan and King mortgages. We must assume here that Paige was correctly charged by the sur-

rogate with the amount of those mortgages by reason of the knowledge of Paige of the design of Lewis to misappropriate and his assistance in enabling him to do it.

The claim, then, of Paige is that he was, in effect, in the position of a surety for his co-executor, and that, when he paid the other parties the moneys his co-executor had appropriated, he became entitled in equity to be subrogated to any remedy the other parties might have had against the share of Frederick Lewis for his misappropriation, and that one of those remedies was the right to have an equitable charge or lien on such share in whosesoever hands it might be. It is, I think, true that, as between the parties themselves, if one had obtained more than his share, an equalization would be made upon a division of the balance of the common property, and that this right for equalization would enure to the benefit of one who, as surety, had been compelled to respond for a defaulting co-owner. I do not suppose that the fact that the parties sought a personal remedy through an accounting in the Surrogate's Court would operate as a waiver of any other remedy (*Clapp* v. *Meserole*, 1 Keyes, 281); or affect the right of the surety. But the trouble here is, the rights of third parties have intervened. A large creditor of Paige has obtained, as he claims, a lien by mortgage and a title by subsequent foreclosure, all before the discovery or ascertainment of the misappropriation, and, upon agreement with the judgment-debtor has advanced and paid out large sums in payment of judgments which are conceded to have been liens on the share of Frederick and were recovered before the misappropriation. I say conceded, because that fact is found by the referee upon the request of the defendants. So that the question, then, is whether the equity of the surety is superior to the right, be it legal or equitable, of the mortgagee or those holding under him. Drake, when he took the mortgage, assumed new responsibilities; he agreed to and did advance moneys to take up prior judgments; he parted with value on the faith of the mortgage, and the referee finds that he then had no notice or knowledge of any misappropriation by Lewis. The evidence authorizes this finding. At the mortgage sale he was a purchaser for a valuable consideration, although the purchase-money was applied on the mortgage debt (*Wood* v. *Morehouse*, 45 N. Y., 376); and his title was as of the time of the execution

of the mortgage. Authorities are cited by the respondent to the effect that under the will no estate vested in the executors; they took simply a power in trust, and the fee was in the devisees, subject to the execution of the power. (*Reed* v. *Underhill*, 12 Barb., 113; *Crittenden* v. *Fairchild*, 41 N. Y., 289; *Hetzel* v. *Barber*, 69 N. Y., 1.) The will admits of this construction, and it does not seem to be disputed by the appellant. His answer is apparently on that basis, and his right to tenancy by the curtesy, which he claims in his answer, is on that basis. If the title vested in the devisee, he had a right to mortgage or sell; if the power to the executors was exercised simply for the purposes of division, then, according to the case of *Ackerman* v. *Gorton* (67 N. Y., 63), the proceeds would be deemed realty for the purpose of the retention of liens on the legal estate; if the power was exercised in order to provide for charges and expenses imposed by the will, then the balance, after providing for such incumbrances, should be deemed still to retain its character of realty. (*Vernon* v. *Vernon*, 7 Lans., 492.) The premises described in the complaint seem to be such balance.

The general rule under the English cases is that if a tenant for life, or other person having a partial interest, be an actor in a breach of trust, all the benefit that would have accrued to him, either from that trust fund or any other estate comprised in the same settlement, may be retained as against him, his assignees in bankruptcy, or, except when the defense of purchase for value without notice is applicable, those claiming under him, until the amount retained, with the accumulations thereon, have compensated the trust estate for the loss it has sustained. (Lewin on Trusts [2d Am. ed.] 609.) The same rule should apply here, and the mortgagee, as a purchaser for value without notice, have the benefit of the exception and be protected. There is another view of the case which supports the same conclusion. About $23,000 of the judgments that Drake assumed and agreed to take up and did take up, were conceded liens on the one-fourth interest of Lewis before the misappropriation. Drake having paid these at the request of Lewis, would be entitled to be subrogated to the benefit of the liens for his protection as against subsequent claimants (*Gans* v. *Thieme*, 93 N. Y. 232; *Clute* v. *Emmerich*, 26 Hun, 10; affirmed, 99 N. Y. 342), and thereby fortify the right which was obtained by the foreclosure.

The amount of these was more than was realized upon the foreclosure sale. How much Drake, in fact, paid for these judgments does not appear. Presumptively, he paid the full amount. Nor does it, I think, affect the question that instead of satisfying the judgments he had them assigned to himself and his wife. Keeping in form the legal lien would not injure his equitable rights. The judgments have all now by lapse of time ceased to be legal liens. But it is said that under the rule laid down by Judge DENIO in the *Clapp Case,* above cited, the share of Frederick Lewis may be followed although he may have transferred or incumbered it before the misappropriation. That case differs materially from this. In that case the fund still remained in the hands of the trustee. It was a case where the title was in the trustee absolutely, and the determination was for the benefit of the beneficiary, directly and not of a party who claimed to be subrogated. Here a party, who was an actor in the misappropriation, seeks the benefit of the principle of subrogation. He is still executor and the case shows there are assets still in his hands, but the amount does not appear and no relief is claimed here as to them. The right of subrogation is an equitable one, and its application must depend upon the circumstances of each particular case. The continued insolvency of Lewis has brought about the present strife. He ceased to be executor in 1873, but nothing was done about an accounting until 1880.

Having in view the origin of the claim of the appellant, he has not, in my opinion, shown any equitable right superior to the right acquired by Drake, and through him by the plaintiff, in the share of Frederick Lewis in the property described in the complaint.

It follows the judgment should be affirmed, with costs.

HARDIN, P. J., concurred; MARTIN, J., did not vote.

Judgment affirmed, with costs.