THE STATE EX INF. A. MOODY MANSUR, Prosecuting Attorney of Ray County, EX REL. MICHAEL FOWLER ET AL., Appellants, v. JOHN J. McKOWN ET AL.

Division Two, December 20, 1926.

**1. APPEAL: Assignments: Under Points: Public Interest: School District.** Assignments of error in appellant's points and authorities will be accepted as a substantial compliance with the statute and the rules of this court, but the review will usually be limited to a consideration of such matters as reasonably come within the purview of the assignments so made, where there are no formal assignments. But if the appeal is from a judgment decreeing that a school district had been legally created and formed, and therefore involving a public interest, the legality of the proceedings will be determined, regardless of omissions in the formal presentation of errors.

**2. SCHOOL DISTRICT: Name: Designated as Town District.** The designation in the petitions of the district to be formed as "Elmira School District" was immaterial; it did not preclude the formation of a common-school district. The statute (Sec. 11201, R. S. 1919) provides for the formation of common-school districts, and if it is otherwise complied with, the unauthorized naming of the district did not affect the legality of its formation, for the county court still has power to designate it by a different name.

**3. ———: Petitions: Addressed to School Boards.** The statute (Sec. 11201, R. S. 1919) does not state to whom petitions for the formation of a common-school district are to be addressed, and the fact that they were addressed to the school boards of the districts to be affected by the formation of the proposed district does not affect the legality of the subsequent proceedings, if they were otherwise sufficiently full and specific and each was signed by ten resident voters of each district, and the clerks of each proceeded to post them in the manner and within the time prescribed by the statute.

**4. ———: ———: Necessity for School District.** Petitions for the formation of a new common-school district by combining parts of the territory of existing districts are not insufficient simply because they do not state that it is "deemed necessary to form a new district." If the petition clearly states the changes to be made in the existing district and what particular part of its territory it will lose and retain if the proposed new district is formed, it is sufficient, for those are the important things for the voters to know.

5. ———: **Informalities: Non-Prejudicial.** Informalities in proceedings relating to public schools are entitled to small consideration, if the material portions of the governing statute are complied with.

6. ———: **Posting Notice: Signature of Clerk.** The fact that a notice of the school election, taken down from the place where posted, after it had been mutilated and its writing partly obliterated, does not show the signature of the clerk, does not affect its legality, where he testifies that he signed it before it was posted and other witnesses testify that as posted it showed his signature. In the absence of evidence to the contrary, the presumption obtains that he did his duty.

7. ———: ———: **Quo Warranto: Issues of Fact.** In a proceeding in the nature of **quo warranto** the finding of facts by the trial court, if supported by substantial evidence, will be regarded as conclusive on appeal. The finding that the notice of the school election bore the signature of the clerk when posted, supported by the testimony of the clerk himself and others, is accepted as true in the appellate court.

8. ———: **Separate Vote: New District.** When a new district is to be formed by carving out parts of two or more common-school districts, the statute (Sec. 11201, R. S. 1919) does not require that a vote shall be taken in the part of the common-school district which is to remain in the district then existing, and a separate vote in that part to be taken into the proposed new district. The formation of a new district out of parts of existing districts is not, within the meaning of the language of the statute, "to change boundary lines of two or more districts," and therefore the amendment of 1909 "relating to the change of the boundary lines of common-school districts" and providing for a separate vote in such case does not apply.

9. ———: **Elections: Records.** If enough appears from the records to show the result upon the proposition submitted to the school election, it is sufficient, although it does not give the details of what was done at the meeting.

10. ———: **Record: Parol Evidence.** Parol evidence of corporate acts is admissible, not for the purpose of altering or contradicting the record recitals, but to supply omissions when the record on its face shows incompleteness.

11. ———: **Annual Meeting: Hour.** In the absence of evidence to the contrary, the presumption obtains that the annual school meeting was held at two o'clock in the afternoon, and the minutes of the meeting are not incompetent because they do not state the hour.

12. ———: **New District: Number of Directors: Six Instead of Three.** The qualified voters of a newly-formed common-school district have power at the first annual meeting to elect a board of directors; and if they elect six instead of three that is a mere irregularity, which does not affect the validity of the new organization, if otherwise legally formed. The first person elected for each term of one, two and three years constitute the board. · ·

Corpus Juris-Cyc. References: **Appeal and Error**, 3 C. J., Section 1588, p. 1414, n. 65; p. 1415, n. 69 New; 4 C. J., Section 2853, p. 878, n. 82. **Evidence**, 22 C. J., Section 69, p. 130, n. 30; p. 133, n. 31; p. 134, n. 33; Section 70, p. 139, n. 46; Section 1430, p. 1088, n. 15; Section 1701, p. 1277, n. 28; 23 C. J., Section 1810, p. 59, n. 22; Section 1965, p. 142, n. 10. **Quo Warranto**, 32 Cyc., p. 1467, n. 52 New. **Schools and School Districts**, 35 Cyc., p. 833, n. 88; p. 837, n. 6; p. 839, n. 16; p. 840, n. 18, 19.

Appeal from Ray Circuit Court.—*Hon. Ralph Hughes,* Judge.

AFFIRMED.

*Milligan & Thompson* and *Lavelock, Kirkpatrick, Clark & Garner* for appellants.

(1) Common-school districts are known by numbers; city, town and village school districts by the name of the incorporated city, town or village, located within the territorial limits of the school district. The petition, filed with the school clerks, called for a new school district, by the name of Elmira, that being the name of the incorporated village, located within the territorial limits of the proposed new school district. Under the petition, if it is to be of any legal force or effect, the new school district to be formed, if any, must be a village district, for a village district, and only a village district is asked for in the petition, and no school district, other than that petitioned for could have been formed or decreed by the court. Under existing conditions, a village district could not have been formed. Secs. 11197, 11239, R. S. 1919; School District v. Wallace, 75 Mo. App. 327. (2) The petitions, signed by more than ten qualified voters in school districts 8, 9 and 11, are insufficient, not in proper form, and did not authorize the vote on change of boundaries at the annual meeting. (a) They are addressed to the board of directors, in each school district, and request action thereon by said boards. (b) The board of directors, in each school district, is requested to post notices, not the clerks of the districts. (c) The petition fails to aver the statutory requirements, namely: the facts, constituting the deemed necessity for the formation of the petitioned for new school district, and for this reason furnished no authority whatever, to the clerk to post notices of any character. (3) In School District Number 8, only five notices were posted. The one at the Linville corner was taken down by relators after the annual meeting and by them introduced in evidence at the trial of this cause. This notice, shows, on its face, that it was never signed, leaving to say the least, not more than four posted notices in this district. (4) Sec. 11201, R. S. 1919, relating to change of boundaries, contains the following: "If the assent to such change be given by the annual meeting of the various districts thus voting, or by the parts of the district to be divided, each part voting separately, the district shall be deemed formed from that date. . . . At all elections to change boundaries, the votes of those parties residing in the territory sought to be attached to or detached from a district shall be separately cast and separately counted by the parties or officers holding such election." It is admitted, at least, that the last-mentioned part of said section was not complied with. The trial court refused to consider this failure as in any way affecting the legality of

the result. This, if the statute is to be observed, was error. (5) The law, providing for annual school meetings requires an accurate record to be kept of the proceedings of such meeting, and still further requires that the record, so made, shall be preserved in the school records of the district. Under such circumstances, such record is the evidence and the only proper evidence of the proceedings at the annual school meeting. Kane & Co. v. School District, 48 Mo. App. 414; State v. Lawrence, 178 Mo. 350. (6) This is a *quo warranto* proceeding. *Quo warranto* is a direct attack upon the sufficiency of the record. If the record, as written, was insufficient, and was not amended, so as to meet the demands of the statute, and there is no special averments in the answer, alleging, in detail, wherein the record was incorrect, oral evidence was not admissible for the purpose of explaining, varying, adding to or changing that record. State v. Dougan, 264 S. W. 999; State ex rel. v. Townsley, 56 Mo. 112; State ex inf. v. Hefferman, 243 Mo. 454. (7) The proceedings to elect directors in the newly-formed district are not in compliance with the statute and are illegal, in this: (a) The notice called for the election of six directors, and in obedience to said notice the assembled voters elected six directors, while it is now admitted by defendants and their counsel that if the district had been in fact formed, only three directors could have been elected. (b) No notice calling for the election of three directors, in this supposed school district, was ever given by any one. (c) The election of said six directors was not in accordance with the statute. Sec. 11208, R. S. 1919. See also Secs. 11194, 11199, R. S. 1919. (d) If the territory sought to be detached from each of the named districts was in truth and in fact legally voted out of the district, it at once became unorganized territory, and could not be converted into a city, town or village district, until after it had been formed and organized as a common-school district. Sec. 11236, R. S. 1919; School District v. Wallace, 75 Mo. App. 322. (8) The court erred in holding that a common-school district had been validly formed when the whole proceedings, shown by the pleadings and evidence, show an intention on the part of all concerned to form a town district.

*James S. Simrall* for respondents.

(1) The petitions and notices in each school district were legally sufficient. Mason v. Kennedy, 89 Mo. 23; State ex rel. v. Job, 205 Mo. 1; State ex rel. v. Gibson, 78 Mo. App. 175. (2) A proceeding by information in the nature of *quo warranto* is in the nature of an action at law, and findings of fact of the trial court, if supported by substantial evidence, are conclusive on appeal. State ex inf. McAllister v. Hall, 228 S. W. 1055; State by Hammett v. Stephens, 243

S. W. 89; State ex rel. Thompson v. Bright, 250 S. W. 599. (3) Minutes of meetings in the three common-school districts, as shown by the record thereof, were sufficient. State ex inf. v. Clardy, 267 Mo. 371; Tucker v. McKay, 131 Mo. App. 732; Critten v. New, 212 S. W. 46. (4) Sec. 11201, R. S. 1919, does not require separate voting by parts of school districts where the proposition is for the formation of a new district. Sec. 11201, R. S. 1919; State ex rel. v. Stone, 152 Mo. 202; State ex inf. v. Scott, 270 S. W. 382; State ex inf. v. Sweaney, 270 Mo. 685. (5) The attempted election of six directors of the newly-formed school district instead of three did not invalidate the organization of the new district. Three of the six were elected legal directors. Williams v. Lovelace, 90 S. W. 983. (6) Designation of the proposed new district by any particular name cannot affect its real legal status. School District v. Wallace, 75 Mo. App. 323; State ex inf. v. Scott, 270 S. W. 384.

WALKER, P. J.—This is a proceeding in the nature of a writ of *quo warranto*, under Article 13, Chapter 13, Revised Statutes 1919, to test the right of the respondents to act as directors of a school district, designated as the Elmira District. Upon a hearing the court found in favor of the respondents, John J. McKown, Jesse Gilmore and Henry Winger; and that the Elmira School District had been legally created and formed. From this judgment the relators have appealed.

Prior to the annual school meetings, held April 7, 1925, in Ray County, there were, among others three common-school districts located in the vicinity of the town of Elmira. The town had no school located therein. Part of the town was in Section 10, Township 54, Range 29, and the other part was located in the east half of Section 9 of the same township and range. Section 10 was included in common-school district Number Eight and the east half of Section 9 was included in common-school district Number Nine; the other school district, near the town of Elmira, was known as Common-School District Number Eleven.

More than fifteen days before the date of the annual school meetings in each of the common-school districts petitions were presented to and received by the clerks of each of these districts. They were each signed by more than ten resident voters of said districts and asked a change so as to form a new school district by taking parts of common-school districts numbered Eight, Nine and Eleven, the new district thus to be formed to be known as the "Elmira School District." These notices are identical in phraseology. The petitions, after describing by metes and bounds the portions of the districts to be detached to form the new district, called for a vote on that prop-

osition. The area of the district to be formed is stated in the petitions. The record discloses the proceedings had in each of the districts from which the new district was to be formed; these facts, if necessary to be considered, will be stated in the discussion of the relators' contentions as to the illegality of the proceedings.

After the vote on the proposition to form a new district had been taken resulting in an affirmative vote in each of the three districts on the proposition, notices were posted calling for a meeting on April 22, 1925, of the qualified voters in the newly-formed district for the election of directors for said district. When the meeting was held six directors were elected, as follows: J. J. McKown and J. M. Douglass, each for three years; Jesse Gilmore, for two years; W. M. James, for two years; Henry Winger, for one year, and Edward K. Knutter for one year. On the 24th or 25th of April, 1925, these directors met in Elmira and organized by electing J. J. McKown chairman and J. M. Douglass secretary. Other business authorized to be performed by a board of directors of a school district was transacted by these six men acting as such.

The twentieth paragraph of the relators' brief, entitled "Points and Authorities," is all that can be classified as an assignment of errors. It is as follows:

"XX. The court erred in holding that a common-school district had been validly formed when the whole proceedings, shown by the pleadings and evidence, show an intention on the part of all concerned to form a town district."

I. If a review of this case be restricted to even a conservative compliance with our Rule Fifteen, requiring separate assignments of error, nothing would be left for our consideration except

**Review.** such matters as may reasonably be construed to be within the purview of the twentieth paragraph of the relators' "Points and Authorities." It is true that where an appellant makes no formal assignment of errors in any part of his brief, but does separately make such assignments in his Points and Authorities, this will be accepted as a substantial compliance with the statute and our rules. [Thornbrugh v. Hall, 263 S. W. 146; Kirkland v. Bixby, 282 Mo. 1. c. 466.] In Cullen v. Atchison County, 268 S. W. (Mo.) l. c. 95, and Osagera v. Schaff, 293 Mo. l. c. 346, an examination of the files in those cases discloses that the "Points and Authorities" therein comply with the rule above stated. This compliance authorized a review of the appellants' contentions in those cases and explains what is meant in the opinions when it is said, in effect, that "although there is no assignments of errors the 'Points and Authorities' will be considered in lieu of same."

However, the matter here involved is one of public interest and it is mete, regardless of errors and omissions in the presentation of same, that the legality of the proceedings be determined.

II. It is contended that the designation in the petitions of the district to be formed as Elmira School District precluded the formation of a common-school district, although the law authorizing the formation of a district of the latter class was complied with in its formation. We are not impressed with the merit of this contention.

**Name.**

The petitioners proceeded under Section 11201, Revised Statutes 1919, which only provides for the formation of a common-school district. If, therefore, the proceedings are found to comply with the requirements of this section a misleading or improper name given to the new district by the petitions will not render its organization invalid. The reason is evident. The formation of a new district upon a compliance with said section is authorized; the naming of the district by the petitioners is unauthorized, that power being conferred on the county court. While unauthorized, the act, viewed from every phase of the proceedings, cannot be said to be prejudicial to any one having an interest in the matter. On the contrary, in addition to the description of the proposed district by metes and bounds, the voter was enabled to more definitely locate it as being a part of the territory in which the village of Elmira was located. That it may be locally known by this name, therefore, although it may be otherwise designated by the county court, in no wise lessens the legality of such proceedings as are necessary to render the organization of the district valid. We therefore rule against this contention. [School District v. Wallace, 75 Mo. App. l. c. 322; State ex inf. Pulley v. Scott, 270 S. W. (Mo.) l. c. 384.]

III. The petitions were addressed to the boards of directors of the school districts to be affected by the proposed change. The statute, Section 11201, supra, is silent as to whom the petitions are to be addressed. When signed as required they were filed with the clerks of each of the districts. The duty of a district clerk, upon the filing of a petition of this character, is thus defined by said Section 11201:

**Petitions: Addressed to Boards.**

"It shall be the duty of the district clerk of each district affected, upon the reception of a petition desiring such change, and signed by ten qualified voters residing in any district affected thereby, to post a notice of such desired change in at least five public places in each district interested, fifteen days prior to the annual meeting."

It is contended by the respondents that upon the receipt of the petitions by the clerks they proceeded to post them as required by the statute. This action is admitted by the relators, but it is insisted that the duty thus enjoined was improperly and insufficiently performed. Of this more later.

As to the contention of the impropriety in addressing the petitions to the board of directors it may be said generally, that if error it was devoid of prejudice. The boards of directors constitute the legal administrators, charged with the management and control of matters relating to the district; and, in the absence of a statute on the subject, it was a reasonable conclusion, especially in the minds of laymen, that petitions seeking to effect a change in the districts should be addressed to these boards. Regardless, however, of what may have prompted this action, the clerks found no difficulty in promptly complying with the duties imposed upon them by the statute. Informalities in proceedings of this character, especially in regard to the public schools, are entitled to little consideration, if the material portions of the governing statute are complied with. [School Dist. v. New London School Dist., 181 Mo. App. 589, and cases.] Although the proceedings may be informal if conceived in honesty and thus conducted they will not be set aside. [School Dist. 14 v. School Dist. 27, 195 Mo. App. 504, and cases 507.]

The petitions are assailed as insufficient in that they do not, in the language of the statute, aver that it was "deemed necessary to form a new district." A petition of this character, to **Necessity.** meet the requirements of the statute, should clearly state the changes to be made in the district and what particular part of the same it would lose or gain by reason of the change. These are the important things the voter is entitled to know and if the petition meets this measure, as it does at bar, it will be sufficient. [State ex rel. Rose v. Job, 205 Mo. l. c. 28, 103 S. W. 493; Mason v. Kennedy, 89 Mo. l. c. 30, 14 S. W. 514; School Dist. 14 v. Sims, 186 S. W. (Mo. App.) l. c. 6.]

IV. It is contended that the posting of the notices in District Number Eight was not in compliance with the statute. The latter, in defining the duties of the district clerk, as shown by the foregoing quotation from Section 11201, requires that official "to **Notice:** post a notice of such desired change in at least five public **Clerk's** places in each district interested, fifteen days prior to the **Signature.** annual meeting." The clerk testified that the notices required by the statute were each signed and posted by him in public places in the district. One of these notices which, while posted, had been subjected to the action of the elements, more especially rain,

was introduced in evidence by the relators in a mutilated condition, caused by its being torn down, and showing no signature of the clerk attached thereto. The mutilation accounted for, in the face of the testimony of the clerk that he signed the notice before posting it and the fact that it had been subjected to the obliterating influence of rain, the contention of the relators that the notice was insufficient was not sustained by the finding of the trial court. The finding appeals to the dispassionate mind as reasonable. It was the duty of the clerk to sign the notices. The presumption obtains in the absence of evidence to the contrary that he performed this duty. He so testified. The testimony of the respondents in this behalf is direct and positive and in harmony with human experience and the judicial knowledge we are entitled to take of the action of alternative rain and sunshine upon written matter submitted to their action.

The testimony of the relators in this regard is purely circumstantial and the probative force sought to be given to it is limited to the fact that the notice when offered in evidence did not have thereon the signature of the clerk. The testimony as thus submitted ignores the modifying effect of the elements, and to entitle it to credence the relators, in effect, ask us to ignore the positive, unimpeached testimony of the district clerk to the contrary. This we decline to do and we therefore approve the trial court's finding in this behalf.

If precedents were needed to sustain this conclusion they may be found in the general rule that in a proceeding in the nature of *quo warranto* the finding of facts by the trial court, if supported, as they are here, by substantial evidence, will be regarded as conclusive on appeal. As was tersely said by RAGLAND, J., in State ex inf. McAllister v. Hall, 228 S. W. l. c. 1057: "This proceeding is in the nature of an action at law, and the findings of fact of the trial court, if supported by substantial evidence, are conclusive upon us." [Citing cases.] More definitely applicable, in that the facts are similar, is the case of State by Hammett ex rel. Roberts v. Stephens, 243 S. W. (Mo.) l. c. 91, in which the court said: "Whether the notices were in proper form when posted, and whether the documents put in evidence were in fact the notices which had been posted by the superintendent, were submitted, on conflicting evidence, to the trial court. There was substantial evidence *pro* and *con*. Under decisions already cited, the finding of the trial court is conclusive on the question."

V. The relators claim that the statute, Section 11201, requires separate voting in that part of the territory taken from each of the three districts; in other words, when a new district is being **Separate** formed under this section, there should be a vote taken in **Voting.** the part of the district which is to remain in the common district then existing, and that there should be a separate vote in the

part to be taken into the proposed district, and it is claimed that the statute was not obeyed in that respect.

In the case of State ex rel. v. Stone, 152 Mo. 1. c. 206, the court points out that this section provides for four contingencies as follows:

"1st, to form a new district by consolidating two or more entire districts; 2nd, to form a new district by carving out parts from two or more districts; 3rd, to form a new district by dividing one district into two parts; and 4th, to change the boundary lines of two or more districts."

In the case at bar the petitioners were seeking (and the annual meetings were held) to present a proposition based upon the second contingency provided for in the statute, which was: To form a new district by carving out parts of two or more districts.

The fourth contingency mentioned in the statute and in the opinion was: "To change the boundary lines of two or more districts."

The fourth contingency is a distinct and separate proposition from the second. It is one thing to change the boundary lines of two or more districts, and an entirely different thing to form a new district.

The Stone case held that where a new district is to be formed by cutting off parts of two districts, the vote on the formation of the new district must be by districts, and not by parts of districts; that if the proposition had been under the third contingency, above set forth, it would have required separate voting, because the statute at that time explicitly provided that if a new district was to be formed by division of one district into two parts, then the voting must be separate.

The statute (Section 11201) was amended after the decision in the Stone case, and the amendment provided that at all elections to change boundaries the votes of those parties residing in the territory sought to be attached to or detached from a district shall be separately cast and separately counted.

It will be noted that the fourth contingency provided for in the statute is: "To change the boundary lines of two or more districts." The amendment of the statute does not say that in elections to form new districts there must be separate voting, but expressly limits the provision to elections to change boundaries. It was evidently the intention of the Legislature to amend the statute only as to the vote to be taken under the fourth contingency, or, in other words, only when the proposition was to change the boundary lines of two or more districts.

The question seeking solution therefore is, what is the correct interpretation of the amendment of the statute?

In State v. Scott, 270 S. W. (Mo.) 1. c. 385, the provisions of the statute for changing the boundary lines of two or more districts are

315 Mo.—85.

thus stated: "A change of the boundary lines of two or more districts rather implies the continued existence of those districts after the change; the detachment of territory from one, and its attachment to another." At page 384 of the Scott case the court says: "Four distinct things are authorized by Section 11201." The court then proceeds to set forth the section, and to number the distinct things that are authorized in exactly the same manner as was done in State ex rel. v. Stone, supra. This distinction was made after the amendment of the statute. It is therefore apparent that the court, in State v. Scott, decided in 1925, ruled that Section 11201 must be construed as providing for the four distinct contingencies. This ruling we regard as correct.

A conclusive case on the proper construction and meaning of Section 11201, is that of State ex inf. v. Sweaney, 270 Mo. l. c. 690 et seq., wherein the court, speaking through Judge WILLIAMS, says:

"The only question presented upon the merits of this appeal involves a construction of Section 10881, Revised Statutes 1909. Said section is as follows: 'All the provisions of Section 10837, relating to the changes of boundary lines of common-school districts, and all the provisions of Sections 10839 and 10840, relating to the division of property between common-school districts, shall apply to town, city and consolidated districts.'

"Plaintiffs in error contend that the above section authorizes the division of a town, a city or consolidated school district into two new school districts, while defendants in error contend that it merely provides for changing the boundary lines of such school district, but does not provide for dividing the same into two new districts. After careful consideration of the statute, we have reached the conclusion that the above section does not provide a way for dividing a town, city or consolidated school district into two new districts. If Section 10881, supra, had provided that all the provisions of Section 10837, Revised Statutes 1909, should apply to town, city and consolidated districts, then there could be no question but that provision had been made for so dividing such districts, because Section 10837, supra, expressly provides for dividing one common-school district into two new districts. But instead of the Legislature saying that all the provisions of Section 10837 should apply to town districts, it merely said that 'all the provisions of Section 10837 relating to the changes of boundary lines of common-school districts' should apply. Referring then to Section 10837 we find that the only express provision therein for changing boundary lines is the provision for changing 'the boundary lines of two or more districts.' Other express provision is made for dividing one district into two new districts. It, we think, becomes at once apparent that the provision for changing the boundary lines of two or more districts could not, by any process of con-

struction, be held to provide a way for dividing one district into two new districts. Section 10881, in its present form, was enacted in 1909. [Laws 1909, p. 819, sec. 130.] Prior to that time it had been expressly held by this court that the law providing for division of common-school districts did not apply to village school districts. [State ex rel. v. Fry, 186 Mo. 198.] Such being the case the Legislature, when it enacted Section 10881, knew that the provisions of Section 10837, relating to the division of one common-school district into two new districts, would not apply to town or consolidated districts unless it so provided in the act, and knowing this to be true and failing to so provide it would be but to do violence to the plain language used to hold that it expressed an intention to apply provisions other than those expressly mentioned. To so hold would be to violate the well-known canon of statutory construction, viz.: That the expression of one thing is the exclusion of another.''

The court, in this opinion, decides that when the Legislature provided by Section 10881 (now 11253) that all of the provisions of Section 10837 (now Section 11201), relating to the change of boundary lines of common-school districts, shall apply to town, city and consolidated districts, said section did not authorize the division of a town, city or consolidated district into two new school districts, but that said section only extended the powers therein granted to the matter of changing the boundary lines of school districts. We regard this as a definite and correct interpretation of what is meant by changing the boundary lines, as provided in Section 11201. It is distinctly held and properly so that the provisions relating to the change of boundary lines is a separate and distinct thing from any other provision of the section. When, therefore, the statute was amended so that at elections to change boundaries there should be a separate voting such amendment could not, and did not, undertake to provide that at elections to form a new district there should be such separate voting.

State ex rel. v. Burford, 82 Mo. App. 343, cited by relators, is not an authority in support of their contentions, because at the time that decision was rendered it was in conflict with State ex rel. v. Stone, 152 Mo. 202, and it is not in line with the later decisions of the Supreme Court.

We find therefore that in the proceedings had in the common-school districts eight, nine and eleven, Section 11201 was properly interpreted and followed and that relators' contention must go for naught.

VI. An indefinite suggestion is made as to the sufficiency of the records or minutes of the annual school meeting and that records

cannot be varied or contradicted by parol evidence. We have reviewed this transcript. While the records offered in evidence do not give all of the details of what was done at the annual meetings enough appears to show, without the aid of parol testimony, the result of the votes upon the proposition submitted and that it carried in each district. Like objections were made to the records in State ex inf. Simrall v. Clardy, 267 Mo. 1. c. 384, in which the court said:

**Record: Parol Evidence.**

"The statute does not undertake to say in what form the minutes of the meeting shall be kept or how minutely, if at all, they shall go into details constituting each act of the meeting. It is evident that the highest degree of verbal skill cannot be expected from the secretaries of such meetings. We think that the statement that the vote was taken by the chairman by ballot and the result ascertained and declared necessarily includes the details which constitute the taking of the vote under the statute. To be sure, the minutes do not say that each person voting advanced to the front of the chairman or that a box was provided for the ballots or that the chairman appointed two tellers to read the votes aloud to the secretary, who kept a tally and reported the result to the chairman. It is unnecessary to decide that these things are not of such vital consequence that if one or all had been omitted the proceeding would have been void, because they are necessarily included in the general statement contained in the minutes."

Like rulings upon objections to the insufficiency of records or minutes will be found in State ex rel. v. Gordon, 231 Mo. 1. c. 547, 133 S. W. 44; Tucker v. McKay, 131 Mo. App. 1. c. 732; Critten v. New, 212 S. W. (Mo. App.) 1. c. 48.

Concerning the introduction of parol evidence, the rule is succinctly stated in Watts v. Levee Dist., 164 Mo. App. 1. c. 283, as follows:

"Moreover, it has been determined in many cases that parol evidence of corporate acts is admissible, as in the case of natural persons, and while the records are generally conclusive of what actually took place, this rule does not apply when the record on its face shows incompleteness."

The record discloses that whatever oral testimony was offered it was consistent with and supported the minutes as made by the secretary at the various meetings. It did not, as contended by the relators, attempt to change, alter or vary the records as made. Cases cited only hold that parol evidence will not be admitted to alter or change a record.

VII.   The minutes are objected to on the ground that they do not state the hour of the dy when they were held.

The statute (Sec. 11209, R. S. 1909) provides that the annual meeting of each school district shall be held on the first Tuesday of April in each year at the district schoolhouse, commencing at two o'clock, P. M.   No evidence was offered tending to show that the meetings were held at any other time or place than that provided for by law.   The presumption in the absence of proof to the contrary, of the regularity of the proceedings must obtain.

**Hour of Meeting.**

VIII.   The powers with which the qualified voters of a common-school district are invested at the first annual meeting, while not sep-arately defined, are in no wise different from those con-ferred upon the voters at any annual meeting by Sec-tion 11210, except as stated in Section 11213, concern-ing the election of the first board of directors, as at bar, when three are to be elected for one, two and three years, instead of one for three years.

**Number of Directors.**

The specific objection here urged is to the power exercised by the voters at this organization or first district meeting in electing six instead of three directors, two for three years each, two for two years each and two for one year each.   This, it is contended, is such an unauthorized exercise or abuse of the power conferred on the voters as to invalidate the organization of the district.   All of those elected, qualified and entered upon the discharge of their duties and con-tinued so to do until the trial court determined by its findings that only three of those elected were authorized to act as directors.   It appears from the record that the circuit court in determining this matter decided that the first person elected for each of the statutory terms was the legally elected director for that term.   No question is raised as to the legality of any of the acts of the board as attempted to be created by the voters.   None of the acts, therefore, of the board as thus constituted were prejudicial.   We have held that the other proceedings necessary to the organization of this board were regular and that the objections made thereto were purely technical.   "The letter killeth, but the spirit giveth life."   The object and purpose of the organization of this district was beneficent in that it afforded added facilities for the education of the children residing therein.   We have uniformly held that statutes in regard to the public school system having to do with the creation and the conduct of the business of country districts should be liberally construed to effect the purpose for which they were enacted.   Formed and conducted as they are by ordinary citizens, not learned in the law, any other construction would tend to defeat the purpose and lessen the educational advantages of

such districts [State ex inf. v. Bird, 295 Mo. 344, 244 S. W. l. c. 940; State ex inf. v. Jones, 266 Mo. 191, l. c. 201, 181 S. W. 50; State ex rel. v. Gill, 190 Mo. 79, 88 S. W. 628; State ex rel. v. Foxworthy, 256 S. W. (Mo.) l. c. 468.]

The Court of Appeals of Kentucky in Williams v. Lovelace, 90 S. W. l. c. 984, in passing upon the legal effect of the election of six instead of five, the authorized number of trustees of a graded school district, said:

"It appears from the record that all steps taken to establish the graded school district, and the election of trustees therein, seem regular and proper in all respects, except in two minor points. One irregularity was that the county judge, in making the order for the election, ordered that six trustees be elected, when by an amendment to the statute only five could be legally elected. That did not invalidate the election. There were more than six voted for, but only five could be elected. The five securing the highest vote were elected."

In neither the Kentucky case, nor in that at bar, is the contention made that the duty devolving on the county judge in the one case and the voters in the other, was not fully performed. The complaint is that more was done in each case than the law required. Where this is the case and the act in excess of the power conferred is fraught with no injurious effects, it may well be classified as but an irregularity. Thus classified it should not be held to invalidate the proceeding.

This judgment should be affirmed. It is so ordered. All concur.