Lester ENGLAND et al., Appellants,

v.

Leonard ECKLEY, Clerk of Consolidated School District No. 2, Audrain County, Missouri, et al., Respondents,

Herbert BEAMER et al., Appellants,

v.

Leonard ECKLEY, Clerk of Consolidated School District No. 2, Audrain County, Missouri, et al., Respondents.

No. 47608.

Supreme Court of Missouri,

En Banc.

Dec. 14, 1959.

Rehearing Denied Jan. 11, 1960.

Ralph L. Alexander, Warren D. Welliver, Columbia, Alexander, Welliver & Wayland, Columbia, of counsel, for appellants.

Latney Barnes, William W. Van Matre, Jr., Mexico, Barnes and Barnes, Mexico, Van Matre and Van Matre, Mexico, of counsel, for respondents.

John M. Dalton, Atty. Gen., John W. Inglish, Asst. Atty. Gen., for State Board of Education amicus curiae.

Brown, Douglas & Brown, R. A. Brown, St. Joseph, for King City School Dist. R-I, amicus curiae.

Don C. Carter, Sturgeon, for Sturgeon School Dist. R-V.

EAGER, Judge.

These cases were transferred here from the St. Louis Court of Appeals by order of this court. The opinion of the Court of Appeals appears at 322 S.W.2d 146. It contains an excellent digest of the facts and the issues, and we shall not relate the facts again in detail. The two proceedings in mandamus were consolidated for trial and on appeal and have been considered together throughout. Alternative writs were issued in the trial court, but were quashed after trial. The Court of Appeals affirmed.

▮ We note first that both proceedings were prosecuted by interested individuals as "Petitioners." The usual mode of instituting a proceeding in mandamus is in the name of the State at the relation of the interested party or parties. State ex rel. Wolfe v. Bronson, 115 Mo. 271, 21 S.W. 1125, 1127; State ex rel. Kelleher v. Board of President & Directors of St. Louis Public Schools, 134 Mo. 296, 35 S.W. 617, 619: State ex rel. Townsend v. Holtcamp, Banc, 330 Mo. 1101, 55 S.W.2d 428. Such has been the universal practice in this state, though not specifically required by Ch. 529, RSMo 1949, governing such proceedings. No objection was made on this ground in the pleadings, but the point was raised at the trial upon objection to the admission of evidence. The trial court thought that the defect was not a material one, and the point has not been briefed here. We shall pass on to the merits, but we mention the question in order that the bar may not be misled in noting the titles of these cases.

Two different groups of citizens and taxpayers of Consolidated School District C–2 of Audrain County filed these proceedings to compel the directors of that district to advertise and conduct elections upon proposals for changes of boundaries as requested in their respective petitions filed

pursuant to section 165.294 Mo.Cum.Supp. 1957 (statutory references are to RSMo 1949 and V.A.M.S. unless otherwise noted). The principal issue is whether the changes sought were permissible and proper under section 165.294, governing changes of boundaries, or whether petitioners should have proceeded under the annexation statute, section 165.300. District C–2 (which will be referred to as C–2) is located in the western part of Audrain County; its shape is roughly that of a figure "7," but with the shank extending straight down (south). The Centralia Reorganized District No. 6 of Boone County adjoins C–2 on the south and west, along its two inner sides. The topography may be better understood by reference to the diagram shown at 322 S.W.2d loc. cit. 148. The England petition sought to remove from the western end or tip of C–2 and to add to Centralia No. 6 (which we shall refer to as Centralia) an area of 43 square miles constituting 24% of C–2; one small segment of this area lay in Monroe County, immediately north of the county line. The Beamer petition likewise sought to remove from C–2 and to add to Centralia an area of 80 square miles lying generally east of the area covered by the England petition, and constituting 45% of the district. The remaining area comprises 55 square miles and 31% of the district. The respective valuations of real estate in the three areas were $902,240, $1,728,350, and $956,530. The Centralia Board submitted both proposals to its voters and each was approved; the Board of C–2 declined to submit either proposal to its voters, apparently regarding both as illegal and void. Several other petitions were filed subsequent to these, each seeking to remove all or part of the remaining area from C–2 and to attach it to some other district, but such references to these as are deemed appropriate will be made in the body of the opinion. There is no question here concerning the status of the respective petitioners as bona fide voters and taxpayers, or concerning the genuineness of the signatures on the petitions.

Our principal question concerns the propriety of seeking these changes under section 165.294. Respondents urge that this was, in substance and effect, an attempt to annex the major parts of C–2 to Centralia and to evade the positive requirement of an affirmative vote in C–2 on both propositions. This necessitates a somewhat detailed review of our statutory provisions. Since 1874 we have had a statute (Laws 1874, p. 151, § 18) permitting changes of district boundaries and containing the essentials of our present section 165.170. In 1887 this was amended to a form very similar to our present section 165.170 (R.S.1889, § 7972). Thus, section 165.170 and its predecessors (applicable to common school districts) have, in substance, authorized: the formation of a new district from two or more districts (or parts thereof), the division of a district into two districts, and changes in the boundary lines between two or more districts. This procedure has always required a vote of the citizens of the districts involved, after petition filed, and some form of arbitration in the event of disagreement between the districts. In recent years (until 1955) the board of arbitration has consisted of four disinterested residents appointed by the county superintendent and the superintendent himself. Section 11201, R.S.1919; Section 165.170, RSMo1949. Since 1955, and where the land lies in more than one county, the membership of the board has been enlarged somewhat. See section 165.170, Cum.Supp. 1957, for Common School Districts; Section 165.294, Cum.Supp.1957, for six-director districts; and see House Bill 223, Laws 1959, p. ——. Until 1955 we had a section which expressly extended the Common School District change of boundary provisions of section 165.170 and its predecessors (but not the provisions therein for the formation or division of districts) to Town, City and Consolidated Districts (§ 11253, R.S.1919; Section 165.293 RSMo 1949). This was repealed in 1955 (Laws 1955, p. 536). At the same time a new section was enacted, section 165.294 (the one directly

in controversy here), providing that in any six-director elementary or high school district a change of boundaries might be had in proceedings to be instituted by petition, and providing further for a submission of the proposal to the voters of the districts affected and for arbitration in case of disagreement. This section contains specific provisions covering those situations where the land lies in more than one county. Section 165.170 (the Common School Districts Statute) which remains on the statute books, contained for many years a provision that no district shall be left (after a change of boundaries) containing less than 20 persons of school age. The amendment thereof in 1955 omitted certain wording which leaves that question in some doubt. The new section involved here, section 165.294 (six-director districts), contains no such provision, nor does it contain any expressed limitation whatever upon the extent of the boundary changes which may be made thereunder. It does not contain the provisions of section 165.170 concerning the formation or division of districts, but is limited solely to changes of boundaries. This section was further amended in 1959 (House Bill 223, 1959 Laws, p. ——) so as to make it applicable also to a change of boundaries between a six-director district and a common school district, to require 10% of the qualified taxpayer voters on a petition for such change, and expressly to permit such changes of boundaries between districts lying in three or more counties; this amended section also provides (subsection 3): "If the districts affected lie in three or more counties, the presidents of the county boards of education of the two counties containing the greatest area affected, together with one member appointed by the state board of education not a resident of the counties affected shall constitute a board of arbitration." In all of these change of boundary statutes, the principle of arbitration upon disagreement between districts has been preserved.

Our statute on annexation (section 165.-300) has been on the statute books in one form or another since 1885 (R.S.1889, § 8097; and compare Laws 1868, pp. 163–164). Such proceedings may be initiated upon petition of voters, but an election is then held in the district to be annexed, or from which territory is to be taken, and a majority of the votes cast there must favor the annexation; there is no arbitration. If the vote be favorable, the board of the annexing district may then accept the area; if the vote is unfavorable, that ends the matter, with a two-year minimum for resubmission. Section 165.300. The crux of the argument in these cases lies in the fact that under section 165.294 a change of boundaries may be submitted to arbitration over the dissenting vote of C–2, with at least a possibility of adoption; whereas, under annexation proceedings, a negative vote of C–2 is final. Its directors have here refused to submit these propositions to a vote in proceedings which might thus be determined by arbitration.

We look again, closely, at section 165.294. It is too long to be quoted here, and we have digested its substance. The Court of Appeals has held that it was intended only for [322 S.W.2d 149] "the making of relatively minor changes or alterations of boundary lines * * * to promote the convenience of the patrons * * * or alleviate situations of hardship * * *." It also held that this statute was not intended to provide a method for a change which would absorb, obliterate or encompass a district, nor was it designed to authorize the transfer of a "substantial portion" of the area, school population, or assessed valuation of a district. The court arrived at these conclusions largely by contrasting the section with the annexation statute, and by considering recognized definitions of the word "annex." It thus held that the petitioners should have proceeded under section 165.300, and it affirmed the denial of mandamus. These two statutory methods were not enacted at one and the

same time as divergent, contrasting and mutually self-exclusive procedures; they have grown up and traveled their separate courses, adding to the general confusion of our school laws over the past decades. While present section 165.294 might be said to have a statutory background in section 165.170 (the Common School District statute) with its limited extension to City, Town and Consolidated Districts (section 165.293), the legislature repealed section 165.293 in 1955 and enacted section 165.294 as a new section, complete in itself. It applies to all six-director districts;[1] it is confined to change of boundaries only; it expressly extends the remedy to situations where the districts lie in more than one county; and it omits the requirement of former section 165.170 that there be at least 20 persons of school age remaining in any district after a change of boundary is effected. We may hardly assume that this omission was inadvertent, as suggested. Arbitration was provided for upon disagreement of districts, the arbitration to be final.

■ We agree with the suggestion that a change of boundaries between districts contemplates the continued existence of both (or all) of the districts affected; this, of course, would prohibit taking all of the territory of the district adversely affected. State ex rel. Consolidated School District No. 2 of Pike County v. Ingram, Mo.App., 2 S.W.2d 113. This constitutes at least one distinction between any "change of boundaries" and a total annexation. We do not have that situation here, although the two petitions now involved would take 69% of the affected area. No authority is cited which is controlling or even persuasive on our facts. The statement in the case of State ex rel. Dahm v. Goodin, Mo.App., 295 S.W.2d 600, 603, that the annexation statute was not applicable because "the entire consolidated district R-V was not involved," is in no way helpful, for it was made in the very face of the statute permitting annexation of a district "or a part of a district." That case constitutes no real conflict with the opinion of the St. Louis Court of Appeals.

■ We do not find inherent in this statute (section 165.294) the limitations placed upon it by the Court of Appeals; on its face it contains none. Nor do we feel that limitations may be written into it by contrasting it with section 165.300. We know of no prior case limiting the operation of this statute (or of section 165.170, its "predecessor") to "minor changes." And it would seem to be more properly a legislative than a judicial function to determine what is a "minor" change and what is a substantial change. The only guide we have now is that the change should not "absorb" or "obliterate" the district from which territory is taken. That principle was announced in section 165.170, at least prior to 1955, and the very logic of the situation confirms it. Since the Court of Appeals did not attempt to fix any standards for the measuring of "minor" and "substantial" changes, the use of the statute has become hazardous under that opinion. The case of State ex rel. Kugler v. Tillatson, Mo., 312 S.W.2d 753, cited by counsel, is not in point; the present question was not raised or considered. The statements made there must be regarded in the light of the issues made.

■ Three briefs amici curiae have been filed here supporting the contentions of the petitioners. It is urged that many district boundaries have been changed pursuant to section 165.294 since its enactment in 1955 and the changes fully consummated; that, however, the results of all of these realignments are now in jeopardy under the opinion of the Court of Appeals. Specific instances are cited of pending litigation seeking to undo certain of these changes in district boundaries, with the probability

1. These include: City, Town, Consolidated and Reorganized Districts, and also certain special city classifications; and see classifications in Section 165.010, Mo.Cum. Supp.1957.

of numerous other suits to follow. These cases are not in our record and we do not take judicial notice of them. We would be less than realistic, however, if we did not recognize that the intense feeling engendered in many of these school disputes would result in a volume of litigation seeking to determine whether areas heretofore affected were "minor" or "substantial." We must also recognize that in some instances schoolhouses in affected areas have been sold upon realignment of territory, taxes have been assessed and collected by the district taking over, titles to school sites have reverted because no longer used as such, and bond issues have probably been voted, all in reliance upon the lawful effect of changes of boundaries made under section 165.294 which may be "substantial." To "unscramble" all of these things retroactively would be virtually impossible. It is our duty, of course, to construe the statute as it stands, and we mention this practical aspect merely as illustrative of an administrative interpretation which we may consider in case of doubt or ambiguity. The State Department of Education has been instrumental in various arbitrations under this statute, and it has construed the statute in a broader sense than would now be permissible under the opinion of the Court of Appeals.

The legislature has thus created a method for "change of boundaries" which has existed, in one form or another, for approximately eighty-five years. A form of administrative determination of disputes by arbitration has always inhered in this method. The history of these statutes, as we have reviewed them, indicates a tendency to broaden and extend the applicability of the procedure rather than to restrict it. In instances where two or more counties are interested the Department of Education is directly involved, through its delegated power to appoint an arbitrator whose vote may be decisive in many cases. It is obvious that this method may sometimes be employed to promote efficiency and economy in the operation of schools, where

residents of a given area are not amenable to the necessities of improved and progressive education (or to any increase in taxation therefor) and would therefore withhold an affirmative vote on annexation. We do not intimate, however, that the respondents here are contesting these cases in any such spirit or from any such motivation.

Our courts have always honored the principle that the school laws should be construed liberally "to aid in effectuating their beneficent purpose, and that * * * substantial rather than technical compliance * * * will suffice." State ex rel. Reorganized School District R–2 of Newton County v. Robinson, Mo.App., 276 S.W.2d 235, 240; State ex rel. School Dist. No. 34, Lincoln Co. v. Begeman, 221 Mo.App. 257, 2 S.W.2d 110, 111; State ex rel. Kugler v. Tillatson, Mo., 312 S.W.2d 753; State ex inf. Mansur ex rel. Fowler v. McKown, 315 Mo. 1336, 290 S.W. 123. It seems that the procedures of annexation (of less than a whole district) and of "change of boundaries" have been used more or less interchangeably. Knowing this, the legislature has enacted section 165.294 in 1955, and amended it in 1959; therein it has certainly not restricted the application of change of boundary procedure, but has rather tended to extend it. If any intent is to be gained from the continuing action of the legislature, it certainly leans toward a broad application of section 165.294.

We note here a possible distinction in the application of section 165.294 and section 165.300 (annexation), which may confirm our conclusion here. In annexation, the proceedings are instituted solely by the district (or part) which "desires to be attached" to some other district, by petition of voters of the originating district. In change of boundaries the proceedings are instituted by petition of residents and taxpayers "in any district affected" (Section 165.294, Mo.Cum.Supp. 1957); residents of the district to which

territory is to be affixed may institute the move; the votes of the respective districts are taken, and an arbitration is held upon disagreement. Thus, annexation seems to be a purely *voluntary* proceeding by and on behalf of territory which "desires" to be annexed and no "necessity" therefor is required at any step; on the other hand, a "change of boundaries" proceeding may be instituted by persons outside the area immediately involved, against the wishes of its citizens, and conceivably effectuated over its objections, through arbitration. But in such a case the statute imposes the requirement that the change be found "necessary." A consideration of these differing and basic aspects of the two statutes seems to corroborate a broader interpretation of section 165.294. We do not hold that this alone is controlling.

It is not our function to pass upon the necessity for any change of school district boundaries. The voters do that in the first instance and, in case of their disagreement, the board of arbitration "shall consider the necessity for the proposed changes * * *." Section 165.294. State ex rel. Reorganized School District R-2 of Newton County v. Robinson, Mo. App., 276 S.W.2d 235; School District No. 42, Audrain County v. School District No. 45, Audrain County, 212 Mo.App. 670, 254 S.W. 726, 728. As a part of such consideration the board must determine whether the change is one "simply for the acquisition of territory" and, if so, deny the change. School District No. 42, supra.

We shall not consider here the petitions for change of boundaries which were filed subsequently to the England and Beamer petitions; they sought, respectively, to take part or all of the remaining territory from C-2. The transcript shows their filings and the contents of the petitions. Some sought to affix territory to the Mexico District, and were ruled illegal because that was not an adjoining district. Some sought further territory for the Centralia District. The first of the latter sought all the balance of C-2 (and was apparently withdrawn), the second sought about one-half of the balance, and the last (concerning which there was some suggestion of procurement on the part of C-2 in order to invalidate all proceedings) again sought all the remainder. The mandamus proceedings now before us do not involve that remaining territory or any part of it. By any test it would constitute a substantial part of the whole district, both in area and assessed valuation. No point is made here regarding the number of pupils remaining. A consideration of these later petitions would merely involve us in speculation concerning motives and future possibilities. We decline to go down that road; the one we are traveling is difficult enough.

Respondents' remaining point is that both the England and Beamer petitions for change of boundaries were insufficient because: (a) each failed to allege a necessity for the change; and (b) the areas affected were inadequately described. We consider (a) first. It is true that the statute (section 165.294) imposes the element of necessity upon a change of boundaries. It does not prescribe the contents of a petition for change. In State ex inf. Mansur ex rel. Fowler v. McKown, 315 Mo. 1336, 290 S.W. 123, a petition for the formation of a new district was held not to be insufficient because it omitted the statutory language of § 11201 R.S.1919,—"when it is deemed necessary to form a new district * * *." This was the same section that later became section 165.170. When we consider, again, the liberality permitted to laymen in applying our school laws (Robinson, Begeman, Tillatson, McKown cases, supra), we hold that this omission was not fatal. It would be preferable to phrase the petition in the statutory language, but the voters know as a practical matter, and regardless of the precise verbiage, that they are voting on the necessity and desirability of such a change. And see, by way of analogy, State ex rel. Reorganized

School District R–2 of Newton County v. Robinson, Mo.App., 276 S.W.2d 235.

■ The remaining point (b) is that the respective descriptions in the petitions are insufficient, and that an exact determination of the limits of the areas was thus prohibited. The voters, of course, must rely on the descriptions printed on their ballots. The England petition first designated that part of the District lying between two north and south highways and being in two named townships of Audrain County. This constitutes a more or less rectangular tract running from the north line of Boone County to the south line of Audrain County (and located in the westerly projection of Audrain). We do not think that local residents could well have been confused by that description. It next included: "Also, all that part of Monroe County, Missouri which was recently annexed to and became a part of Consolidated District No. 2, Audrain County, Missouri, and which lies adjacent to and West of said Audrain County Route C." We must give some credence to the practical knowledge of residents of the immediate community. This area is a small rectangular tract lying immediately north of and adjacent to the Audrain County line, and west of County Route C, which is shown on all recognized highway maps. There is no indication that any other part of C–2 lies in Monroe County, or that there had been any other annexation of territory therefrom. Here the board certainly knew what was intended, for it had made the annexation. We know of no reason why the "secretaries of the district boards of education" (section 165.294) may not amplify such a description in posting their notices "of the desired change," if they think it is likely to be confusing. They may submit the proposal to a vote as it is presented to them, or they may supplement the description, if they deem this necessary. It is true that the statute does not require the latter action, but it does not prohibit it. We do not hold that a board must submit to the voters a description for change which is wholly

unintelligible (see State ex rel. Kugler v. Tillatson, Mo., 312 S.W.2d 753, 756), but such is not the case here. As a practical matter there would probably be no substantial doubt in the minds of the interested residents concerning the area involved.

■ The Beamer petition described the area as: "All that part of Audrain County, Missouri, lying East of the State Highway known, described, and identified as Audrain County Route C running generally northerly from the City of Centralia in Boone County, Missouri, and lying North of Missouri State Highway No. 22, all of said above described property being in Saling and Wilson Townships and being a part of Consolidated School District No. 2, Audrain County, Missouri." The argument that this might designate all of Audrain County lying east of Route C and north of Highway 22, and that the phrase "all of said above described property" means nothing,—is not convincing. The first part of the description would normally be read with the latter part and be considered as limited thereby. Any reasonable person with even slight knowledge of the area would have no difficulty in understanding the description. Two sides are plainly designated as the highways; the other two are the north and east district boundaries. The phrase "being a part of * * * District No. 2 * * *" limits the designation to that part of the county which lies east and north of the respective highways and which lies also both in C–2 and the county. We hold both petitions to be sufficient against the objections. The rule of liberality of construction is again applicable. The Board may itself determine whether to supplement or amend the descriptions solely for clarification, if needed.

■ We have not specified how much of a district may thus be taken on change of boundaries nor how much must be left. We have ruled on the only question now before us, holding that 69% may be taken, if these proceedings are successful. Our decision leaves some remaining

ambiguity for the future, as did the opinion of the Court of Appeals, but the exact extent of a permissible taking and of a required leaving, is, in its final analysis, a legislative matter. The legislature will have an opportunity to consider section 165.294 again in view of these developments. But in the meantime, in case of disagreement between districts, a board of arbitration may always consider (as a part of its consideration of necessity) the extent and character of the area remaining, as well as of the area taken. The question of necessity embraces the status of the area remaining as well as that of the area taken. We do not rule upon the validity of the so-called legislative "policy" urged upon us, which is said to fix the minimum (and the only minimum) of 20 pupils, or 20 pupils and eight square miles, or 20 pupils and $50,000 of assessed valuation, which shall remain in any district after it is reduced by such a change. (The amici brief of the State makes that suggestion, citing sections 165.170, 165.307, 165.287, and 165.685 and 165.177 considered jointly.) As stated at the outset, no limitation is expressed in section 165.294. We have only the implied injunction that both districts shall continue to exist. In enacting section 165.294, modeled in part on section 165.170, the legislature wholly omitted the minimum of 20 pupils which had theretofore been contained in section 165.170; we cannot assume that this was inadvertent. It may be that since a change of boundaries contemplates the continued existence of both districts, and in the absence of any specific limitation in section 165.294, a sufficiently substantial area should remain to permit its effective operation as a school district.

The judgment of the Circuit Court will be reversed with directions to issue its peremptory writs of mandamus requiring respondents in each case (or their successors in office) to submit the respective proposals for change of boundaries to the voters of Consolidated School District No. 2 of Audrain County, and to take all steps neces-sary to that end. We leave to the discretion of the Circuit Court, which knows the local situation better than we, the question as to whether a special election should be ordered (State ex rel. Kugler v. Tillatson, Mo., 312 S.W.2d 753, 758; State ex rel. McCain v. Acom, Mo.App., 236 S.W.2d 749) or whether the proposals should be submitted at the next annual election of the district.

It is so ordered.

All concur.