STATE ex rel. Nancy L. NEELY et al., Relators-Respondents,

v.

Beverly VANDERPOOL, Secretary to the Board of Education of Cowgill School District, No. R–VI, of Caldwell County, et al., Respondents-Appellants.

No. KCD 29654.

Missouri Court of Appeals, Western District.

Jan. 29, 1979.

A. V. McCalley, McCalley & Thiebes, Richmond, for respondents-appellants.

Max W. Foust, G. Spencer Miller, Lloyd L. Messick, Morris, Foust & Beckett, Kansas City, for relators-respondents.

Before SHANGLER, P. J., SWOFFORD, C. J., and WASSERSTROM, J.

WASSERSTROM, Judge.

This is a mandamus action to compel the Secretary and Board of Education of Cowgill School District R–VI (hereinafter referred to collectively as "Cowgill") to submit to the voters of that district a proposition to change the boundaries between the Cowgill District and Braymer School District No. C–IV. The trial court ordered Cowgill to submit the proposition as prayed. Cowgill appeals. We affirm.

Cowgill School District is a six-director district covering 34 square miles which includes the town of Cowgill. It presently serves 54 elementary students, 31 high school students and 2 special education students. The property valuation now is $1,618,990. It is bordered on the east by the Braymer School District which is also a six-director district.

In 1976, the requisite ten percent of the voters of the Cowgill District petitioned for a change of boundaries of the Cowgill and Braymer Districts under the provisions of Section 162.431, RSMo Supp.1973. By the change requested, 23 square miles of the Cowgill District, including the area of the town of Cowgill and also the area on which the schoolhouse is located, would go to the Braymer District, leaving to the Cowgill District only 11 square miles. Also, under the change requested, the Cowgill District would be left with only 5 elementary students, 3 high school students and no special education students, and the amount of the property valuation left in the Cowgill area would be reduced to $405,075.

Upon presentation of the petition to the Board of the Braymer District, an election was held and the proposition was passed by the voters of that district. However, on presentation of the petition to the Board of the Cowgill District, the Board refused to submit the proposition to a vote. That refusal led the petitioners to file the present mandamus action to force Cowgill to do so, and the trial court issued its alternative writ.

Cowgill presented evidence at the trial which showed that if the boundaries were changed as requested, the revenue of the Cowgill District would be reduced to $13,164.93; that the cost of operating the District would be greatly in excess of that amount; and that it would be impossible to operate a school under those circumstances, particularly with the schoolhouse being taken away. Relators (petitioners for the change) on the other hand submitted evidence that the Cowgill District was already paying tuition in order to send its high school and special education students to other districts and that Cowgill, after the requested change of boundaries, could do likewise for the 5 elementary students remaining, or it could proceed to annex the remainder of the Cowgill District to either the Braymer District or to the Polo School District. At the conclusion of the evidence, the trial court made its alternative writ of mandamus peremptory.

On this appeal, Cowgill makes the single point that the proposed change would be an inappropriate use and a perversion of Section 162.431, in that it would obliterate the Cowgill District, would not permit the continuation of both the Cowgill and Braymer Districts, and would not leave a sufficiently substantial area in the Cowgill District to permit its effective operation. In support, Cowgill relies upon *England v. Eckley*, 330 S.W.2d 738 (Mo. banc 1960).

Because of the heavy reliance by Cowgill upon the *England* decision and the importance of that opinion to a decision of the present case, a rather detailed statement of the facts and holding in that case is in order. In *England* there were petitions to

change the boundaries of two school districts so as to take from District C–2 and to give to District No. 6 69% of the territory of District C–2 and $2,630,590 out of $3,587,120 of the C–2 assessed valuation. The trial court in *England* issued an alternative writ requiring District C–2 to put the proposition to a vote of its voters, but upon completion of the evidence the court quashed the writ. On appeal, the St. Louis Court of Appeals affirmed upon the ground that the extent of the taking from District C–2 was so substantial as to constitute an annexation rather than a mere change of boundaries, and it therefore held that the only procedure available was that provided by the statute relating to annexation. However, upon transfer, the Supreme Court reversed.

The Supreme Court opinion sets forth an extensive review of the history of the school statutes relating to changes of boundaries between districts. The opinion points out that prior to 1955 there had been an express restriction upon the extent to which a change of boundaries could reduce the school district whose area was taken by reason of the boundary move. However by the 1955 statutory revision, that restriction was eliminated from a related statute and no such restriction was put in Section 165.294, which was the section directly in controversy in *England* and which section was the direct predecessor of the present Section 162.431, in issue in the present case.

The court in *England* went on to say that the procedure for annexation and that for "change of boundaries" have been used more or less interchangeably and that there has been an historical trend toward broadening and extending the application of the change of boundary procedure. The opinion states that it is not the function of the court to pass upon the necessity for any change of school district boundaries, although there is an "implied injunction that both districts shall continue to exist." The narrow holding of the opinion is that "[b]y any test it [the balance left to District C–2] would constitute a substantial part of the whole district, both in area and assessed valuation." The court went on, however, to

venture the following speculation by way of dictum: "It may be that since a change of boundaries contemplates the continued existence of both districts, and in the absence of any specific limitation in section 165.294 [now Section 162.431], a sufficiently substantial area should remain to permit its effective operation as a school district." The court also observed that the *England* decision "leaves some remaining ambiguity for the future" and that "[t]he legislature will have an opportunity to consider section 165.294 again in view of these developments."

We can assume, favorably to Cowgill, that the speculative dictum referred to immediately above should be considered as a ruling (under the statutes then in force) that a change of boundary should not be so drastic as to reduce one of the districts so far as not to permit it to continue effective operation as a school district. We can further assume that under the facts of the present case, Cowgill would be so stripped. Even so, the *England* decision does not control the present case, because since 1960 when *England* was decided, the legislature has responded to the invitation of that opinion to further legislate upon this subject.

In 1963 the school statutes were subjected to major revision. Section 165.294 became Section 162.431 and remained essentially unchanged. However the 1963 revision added a new Section 162.071 which introduced with respect to school boundary changes a new concept which is crucial to the decision of this case. This new section appears in Laws of Mo.1963, p. 216, as follows:

" * * * Whenever * * * a change in the boundaries of an existing school district leaves the remaining part of a district containing, less than twenty children of school age and either less than eight square miles of territory or an assessed valuation of less than fifty thousand dollars, any three taxpayers of the * * * remaining part of the district may call a meeting of the voters of the territory to vote on the proposition of

annexation to an adjoining school district by giving notice of the meeting and the purpose thereof in the manner prescribed by section 3–6 as determined by the taxpayers. The voters at the meeting shall thereafter proceed as provided in section 3–43. If no proceedings to attach such remaining part of a district to an adjoining district are instituted within sixty days, or if the proceedings are unsuccessful, the county board of education shall order its annexation to an adjoining district. * * * "[1]

Still further extensive changes in the school statutes occurred in 1973. At that time, Section 162.071 was amended to further provide that it would apply when the change in the boundaries of an existing school district leaves one of the districts "without a schoolhouse." By reason of this last addition, the present case falls squarely within the ambit of Section 162.071.

 The pattern of these changes shows a new approach to the problem involved in the *England* case and here, as compared to what had previously obtained. Prior to 1955, the legislative approach was to prohibit a change of boundaries if it would result in unduly weakening one of the school districts. Under the new statutory approach adopted in 1963 and furthered by the 1973 amendment, the concept is to permit changes of boundaries even when the change is so drastic as to make one of the districts affected inoperable; but if so, the solution is to be the annexation of the non-viable school district to one of its larger neighbors.

 Therefore, under the present statutes, Cowgill may not resist placing before its voters the present proposition even though that proposition if adopted will leave it with too few students, too small an assessed property valuation, and an underfinanced condition. That does not leave Cowgill without recourse. It may still un-

dertake to convince the voters of the district as a whole that the proposition is unnecessary and unwise and should not be adopted. If a majority of the voters in the district agree and vote down the proposal, then the matter may be taken to arbitration under the provisions of Section 162.431, but in that case Cowgill will have full opportunity to persuade the board of arbitration of the justice of its position. Only if the arbitration goes against it, will it be faced with the necessity of annexation pursuant to Section 162.071.

The trial court was correct in ordering Cowgill to submit the proposition in question to the voters of the district. That judgment is therefore affirmed.

All concur.

---

1. Appended to Section 162.071, RSMo Supp. 1973 is an editorial note that the source of this statute is RSMo 1959, Sections 165.167, 165.-287 and 165.685. However, none of those statutes dealt with the situation where the drastic reductions in question were caused by "a change in boundaries" procedure under former Section 165.294 (currently Section 162.431) or former Section 165.170.