**STATE of Missouri on relation of David Wayne McGUIRE and Ray Hayden, Relators,**

v.

**Cecil HERMANN, Secretary, Board of Directors of Spring Hill School District No. 27 of Jasper County, and Wallace Tubaugh and Glenn W. Osborne, Directors of Said District, Respondents.**

No. 8504.

Springfield Court of Appeals.

Missouri.

May 13, 1966.

Arkley W. Frieze, Vernie R. Crandall, Frieze & Crandall, Carthage, for relators.

Herbert Casteel, Esterly & Casteel, Carthage, for respondents.

HOGAN, Judge.

In this proceeding in mandamus, the relators sought to compel the respondents to honor their petition for an election upon a proposed change of boundary between school districts. The circuit court refused the peremptory writ and the relators have appealed.

The cause has been presented in this court upon the pleadings and a stipulation of facts which was made orally before the trial court. The record is incomplete in one respect, which we shall notice further. However, it appears that three school districts are more or less directly involved. The relators are residents of the Spring Hill (or Springhill) School District No. 27 of Jasper County, which is a three-director or common school district. The respondents are the directors of that district. The second district involved is the Golden City R–VI School District, into which the relators wish to be taken. The third school district involved, which lies to the west of the Spring Hill District, is the Jasper School District. Another school district, mentioned but not directly involved, is the Avilla School District, which adjoins the Spring Hill District on the south. It appears that the Golden City R–VI School District lies mostly in Barton County, while the Spring Hill District is in Jasper County.

On October 5, 1964, the relators (and others), as residents of the Spring Hill District, presented the following petition to the respondents as directors of the school district:

"DATED October 5, 1964

To the district boards of education, Spring Hill District #27 and Golden City R–VI District.

We, the undersigned qualified voters who are taxpayers of District No. 27, County Jasper, State of Missouri, desire the following changes in district boundary lines: 8–29–29 157.64A NW EX 2.36A HWY ON N, 8–29–29 80 A NE SE & SE NE, 8–29–29 80A NW SE & SW NE, 9–29–29 40 A NW SW, 9–29–29 38.78A NW NW EX 1.22A HWY ON N, 1–29–30 319.90 A LOT I NE & E ½ LOT 2 NE & SE & W ½ LOT 2 NE, 12–29–30 30 A NE NE EX 10A E SIDE, 12–29–30 200A S ½ NW & N ½ SW & SW NE, 12–29–30 40A NW NE, 12–29–30 40 A SE SE, 5–29–29 77.90A LOT 4 NW EX 1.10A FOR RD, 5–29–29 79 A LOT 3 NW EX S 20′, 5–29–29 39 A W ½ LOT 2 NW EX N 20′, 5–29–29 156.04A LOTS 5 & 6 NE, 5–29–29 38.01 A E ½ LOT 2 NE, 5–29–29 225.15A LOTS 5 6 & 7 NW EX 1.37A FOR RD ACROSS LOT 5 NW, 5–29–29 156.04 A LOTS 3 & 4 NE, 4–29–29 39.93 A E ½ LOT 3 NW, 4–29–29 159.42 A LOTS 4 & 5 NW, 4–29–29 157.57 A SW EX 2.43 A HWY ON S, 6–29–29 120 A LOT 1 NE & E ½ LOT 2 NE, 6–29–29 242.93 A LOTS 1 & 2 NW & S ½ E ½ LOT 3 NW–65 A W ½ LOT 2 NE & 25 A S SIDE W ½ LOT 3 NE, 7–29–29 148.44 A LOTS 1 & 2 SW & N 30′ SE, 7–29–29 120 A W ½ NE & NE NW, 6–29–29 180.52A E

½ LOTS 3 4 5 NE EX 2.48A FOR RD ACROSS LOTS 4 & 5 NE & N 15A W ½ LOT 3 NE & W ½ LOT 4 NE & S 8 ½ A W ½ LOT 5 NE S OF DEER CRK, 6–29–29 66.5A N SIDE E ½ LOT 3 NW & E ½ LOT 5 NW S OF DEER CREEK & E ½ LOT 4 NW, 6–29–29 79.2A S ½ SE EX CHURCH SITE BEG 147 ½' W of SE COR N 240' E 147 ½' S 56' W 102 ½' S 184' W 45' TO BEG & EX BEG 240' N OF SE COR W 147 ½', 6–29–29 75.63 A N ½ LOTS 1 & 2 SW FRAC, XXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXX.

and hereby petition you to give fifteen days notice prior to the Annual School Election by posting in at least five public places in each district affected by such change, or by publishing in the newspaper."

It has been stipulated, among other things, that the realty described in the petition includes 160 acres belonging to a Mr. Stuckey. Mr. Stuckey's land is not in the Spring Hill District; it is in the Jasper School District. It is also stipulated that Mr. Stuckey did not sign the petition, but knew of it and wanted to be taken in the Golden City District, as did the relators. It is also stipulated that some of the land described—80 acres—was already in the Golden City District. The parties have also agreed: (a) that the signatures were genuine; (b) were "sufficient in number"; and (c) that this petition was presented to the directors of the Golden City School District as well as to the respondents, but not to the directors of the Jasper School District, in which Mr. Stuckey's land lay.

The immediate response of the directors of the Spring Hill District is not shown, nor is there any record indication of the action taken by the directors of the Golden City District. However, on February 5, 1965, the relators and eight other residents of the Spring Hill District presented a second, supplemental, petition to the respondents, which is as follows, omitting signatures:

"DATED February 5, 1965

TO THE DISTRICT BOARDS OF EDUCATION, SPRING HILL DISTRICT #27 AND GOLDEN CITY R–VI DISTRICT

We, the undersigned qualified voters who are taxpayers of District No. 27, County Jasper, State of Missouri, desire the following changes in district boundary lines:

12–29–30 80A N ½ SE

and hereby petition you to give fifteen days notice prior to the Annual School Election by posting in at least five public places in each district affected by such change, or by publishing in the newspaper."

It is stipulated that this petition describes land which lies in the Spring Hill District but does not adjoin the Golden City District, although it does adjoin land described in the first petition. This second petition was also served on the directors of the Golden City District, and it is stipulated that the signatures on this petition were genuine and adequate in number. The trial court considered this petition in connection with the first, and so shall we.

On March 3, 1965, the respondents addressed the following communication to the directors of the Golden City District:

"March 3, 1965

Board of Directors
R–VI School Dist.
Golden City, Mo.
Gentlemen:

Springhill Dist. #27 of Jasper Co. will not post notice for change of boundary at the annual school election.

Our reason is stated in section 165.177 of the School laws of Mo.

By order of Board of Directors
Signed
Cecil Hermann
Wallace Tubaugh
Glen W. Osborne"

There is still another petition, or request, found in the record addressed solely to the respondents on March 10, 1965, requesting action on the proposals advanced in the two earlier petitions. Omitting signatures, this third petition is as follows:

"TO THE SCHOOL BOARD OF SPRING HILL DISTRICT #27

We, the undersigned residents of Spring Hill District No. 27, County Jasper, request that you post the notices for the change of boundary election to be held at the annual school election."

Among other facts incidentally stipulated are these:

1. That no school is being operated in the Spring Hill District;

2. That if the boundary change contemplated by the first petition were effected, thirteen of the twenty-four children of school age residing in the Spring Hill District would be put in the Golden City District;

3. That if the relators' requested change of boundary proposed in both the first and supplemental petitions was made, fifteen of twenty-four children of school age residing in the Spring Hill District would be in the Golden City District;

4. That at the time of trial seventeen children residing in the Spring Hill District were attending school in the Golden City District and one child was attending school in the Avilla School District, and only these eighteen children of twenty-four of school age were then attending school.

Fundamentally, this controversy involves a construction of former Sections 165.170 and 165.294, RSMo (1959). Both those sections dealt, among other things, with boundary changes between school districts. The history and general purpose of these two former statutes [1] was developed at length by the Supreme Court in England v. Eckley, Mo., 330 S.W.2d 738, to which both parties have referred again and again, and we need not develop the legislative history of these statutes in this opinion. Section 165.170 was applicable to common school districts and authorized changes in boundaries between two such districts upon petition filed and after a vote of the citizens of the districts involved, while Section 165.294, as amended in 1959, authorized changes of boundary lines between six-director elementary or high school districts, or between such six-director districts and a common or three-director district, upon petition of ten per cent of the qualified voters who were taxpayers, and after a favorable majority vote in each of the districts involved.

One vexed and recurrent question concerning boundary changes made under the provisions of Section 165.294 was how much of a district could be taken on a change of boundary. Section 165.170(2) provided that no boundary change could be effected thereunder "* * * by which any district shall be left containing * * * by actual count less than twenty persons of school age * * *" and former Section 165.177 prohibited division of a common school district when the division would leave a district containing "* * * an assessed valuation of less than fifty thousand dollars and an enumeration of less than twenty persons of school age or at least eight square miles of territory and twenty persons of school age." Whether

---

1. When the statutes concerning education and libraries were revised by the Seventy-Second General Assembly in 1963, both these statutes were repealed and replaced. Former Section 165.170 was repealed and replaced by L.1963, p. 236, §§ 3–68 and 3–69, and Section 165.294 was repealed and replaced by L.1963, p. 226, § 3–42. The material formerly covered by Section 165.170 is now covered by Sections 162.-681 and 162.691, RSMo (1959), Cum. Supp.1965, and V.A.M.S., and that covered by Section 165.294 is now found in Section 162.431, RSMo (1959), Cum.Supp. 1965, and V.A.M.S. The effective date of the revision was expressly deferred to July 1, 1965, by L.1963, p. 335, § 16, and the former statutes were in effect when this controversy arose.

or not there was thus an implied limitation on the kind of boundary change which could be effected under former Section 165.294 was a matter of divergent views and a question of some complexity. Construing Section 165.294 in the England case, supra, the Supreme Court concluded in 1959 that Section 165.294 impliedly contemplated that both districts would continue to exist after the boundary change was made, but declined to specify how much of a district might be taken and how much might be left after a boundary change pursuant to that section, specifically " * * * leav[ing] some remaining ambiguity for the future * * *." We are invited to give fresh consideration to the questions of statutory construction discussed in the England case, supra, and to resolve the ambiguity of which the Supreme Court spoke. We decline to do so, not only because it is unnecessary to a disposition of this appeal, but because we find it impossible to do so realistically.

■ As we have said, this cause was presented both in the trial court and here upon the pleadings and a record stipulation of facts. Probably because of their closeness to the situation, counsel have left us to speculate as to some of the facts, particularly the organization of the Golden City R–VI School District and the Jasper School District. We do not call attention to this ambiguity in the record to be critical of counsel's presentation. Counsel for both parties have assumed—as is often the case—that we have the same intimate picture of the situation in our mind's eye, so to speak, as do they, which is simply not the case. We know that the Spring Hill School District No. 27 of Jasper County is a three-director district, and from some incidental statements in the record we assume that the Golden City R–VI is a six-director district, lying mostly in Barton County. In this instance, we may not judicially notice the organization of the Jasper School District or the Golden City R–VI School District. State v. Mahaey, 19 Mo.App. 210, 214 (II).

Depending upon the organization of the school districts involved, either former Section 165.170, which appeared to contain a specific limitation, or Section 165.294, which contained only an implied limitation, may be applicable. We are thus left to speculate which statute we shall specifically construe.

■ Nevertheless, the record is adequate for a proper disposition of the appeal. The primary ground upon which the trial court based its refusal to issue the peremptory writ was that the petition is not informative enough to advise the prospective voter of the boundary change being sought, and we agree. We wish to limit our opinion carefully, but to make our reasons for· decision as clear as possible, for fear of seeming perfunctory in our judgment.

As we have said, the record facts leave us in doubt whether the boundary change proposed was properly covered by former Section 165.170 or 165.294. But without undertaking any comparison of the similarities and differences of the two sections, it is apparent that both contemplated submission of an initiative proposition to the voters, and that the office of the petition was to formulate the proposition to be submitted. Neither statute prescribed the contents of the petition, but both required that the voters be given notice of "the desired change." Section 165.170(1); 165.294(1).

■ In considering the kind of petition required to initiate a change of boundary between school districts, our courts have consistently adhered to the general principle that the school laws are to be liberally construed, and have held that the petition need not allege or set forth specifically the necessity for a change. England v. Eckley, supra, 330 S.W.2d at 745 [12]; State ex inf. Mansur ex rel. Fowler v. McKown, 315 Mo. 1336, 1343, 290 S.W. 123, 126 [5], that the description of the land involved in the change will not be technically scrutinized, England v. Eckley, supra, 330 S.W.2d at 746 [13] [14, 15], and

that matters of limitation or exception contained in the statute need not be specifically negatived. School Dist. No. 14, Clinton County v. Sims, 193 Mo.App. 480, 482–483, 186 S.W. 4, 6 [1]. In other words, as the appellants argue, the petition is not a pleading and its sufficiency is not to be tested by subjecting its contents to technical analysis or scrutiny. On the other hand, it is obvious that some definite, concrete proposition must be set forth in the petition, for as the court stated long ago in School District No. 1 v. School District No. 4, 94 Mo. 612, 618, 7 S.W. 285, 287, " * * * the vote cannot have the effect * * * of changing [the boundaries] of old districts, unless it is specified [in the proposition to be voted on] where those boundaries will be, should the proposition be adopted. A vote upon a general proposition * * * to change the boundaries of old districts, can have no force or effect whatever." Otherwise put, unless the petition requests some definite change, there is nothing to vote upon. And, while we suppose the district clerk or secretary might, to a limited extent, rephrase or clarify the proposition for the purpose of giving notice if the petition were awkwardly or ineptly drawn, it has been consistently held that the petition itself should inform a voter reading it how his district is to be affected by the change of boundary, and what particular territory his district will lose or gain by reason of the change.[2] In our view, the petition in this case is wholly insufficient because it simply does not state what changes are requested or what territory the districts affected are to gain or lose, or where the new boundary line would be. Indeed, without resort to extrinsic proof, one could not ascertain the nature of the proposition to which the signers had subscribed.

■ What the trial court had before it in this case was not whether the respondents had validly exercised their discretion by giving the reason they gave for failing to proceed; the trial court had to consider whether, upon the record presented and the facts stipulated, it was mandatory and imperative that the board or its clerk or secretary proceed with the posting of notices and the calling of an election. Granting that if a valid petition had been filed the respondents had no discretion to refuse to proceed and that mandamus would have been a proper remedy to compel them to do so, State ex rel. McIntosh v. Rainey, Mo. App., 397 S.W.2d 344, 346 [1, 2], yet the right to a peremptory writ depends upon the existence of a clear, unequivocal right to the relief requested, State ex rel. Breshears v. Missouri State Employees' Retirement System, Mo., 362 S.W.2d 571, 573 [3]; State ex rel. Priest v. Gunn, Mo., 326 S.W. 2d 314, 325, and the writ may not issue where the right is doubtful. State ex rel. Sho-Me Power Corporation v. Hawkins, Mo.App., 337 S.W.2d 441, 444, and cases cited note 9. In this case, respondents had no valid petition before them requiring action, and the peremptory writ was properly refused. We wish to be perfectly clear and explicit in saying that we express no view whatever concerning the other, more complex issues laid before us, nor do we mean to comment in any way upon the subjective propriety of the board's action.

For the reasons stated, the judgment is affirmed.

STONE, P. J., and RUARK, J., concur.

---

2. State ex inf. Mansur ex rel. Fowler v. McKown, supra, 315 Mo. at 1343, 290 S. W. at 126 [5]; State ex rel. Rose v. Job, 205 Mo. 1, 28, 103 S.W. 493, 500; Mason v. Kennedy, 89 Mo. 23, 30, 14 S.W. 514, 515 [2]; School District No. 1 v. School District No. 4, supra, 94 Mo. at 618–619, 7 S.W. at 287; School Dist. No. 14 Clinton County v. Sims, supra, 193 Mo.App. at 483, 186 S.W. at 6 [2].